IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

NO. 19-12554

---

UNITED STATES OF AMERICA,

Appellee,

versus

KONRAD GUZEWICZ,

Appellant.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

---

# APPENDIX TO APPELLANT'S INITIAL BRIEF

JOFFE & JOFFE, P.A.
Attorney for Appellant
The 110 Tower Building
110 S.E. 6th Street
17th Floor, Suite 1700
Ft. Lauderdale, Florida 33301
Telephone: (954) 723-0007
Florida Bar No. 0814164
davidjjoffe@aol.com

# Index


**TITLE** **TAB**

Docket Sheet – United States v. Guzewicz
Case No.: 8:18-cr-265-T-24CPT. . . . . . . . . . . . . . . . . . . . . . . . . . 1

Information filed on June 4, 2018
(DE:1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Judgment in a Criminal Case
Dated: July 2, 2019
(DE:45) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Transcript of Change of Plea Hearing
Dated: June 18, 2018
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Transcript of Sentencing Hearing
Dated: July 2, 20019
(DE:58). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


## CERTIFICATE OF SERVICE

I, David J. Joffe, attorney for Appellant, KONRAD GUZEWICZ, do hereby certify that a true and correct copy of GUZEWICZ'S Appendix to Initial Brief of Appellant was duly served on the United States and all attorney of record by filing same on the Court's CM/ECF system on August 6, 2019.

By /s/ David J. Joffe
DAVID J. JOFFE, ESQUIRE

TAB 1

APPEAL, BOND, CLOSED

# U.S. District Court
# Middle District of Florida (Tampa)
# CRIMINAL DOCKET FOR CASE #: 8:18-cr-00265-SCB-CPT-1

| | |
|---|---|
| Case title: USA v. Guzewicz | Date Filed: 06/04/2018<br>Date Terminated: 07/02/2019 |

---

Assigned to: Judge Susan C. Bucklew
Referred to: Magistrate Judge Christopher P. Tuite

Appeals court case number: 19-12554-F U 11th Circuit

**Defendant (1)**

| | | |
|---|---|---|
| **Konrad Guzewicz**<br>*TERMINATED: 07/02/2019* | represented by | **David Jonathon Joffe**<br>Joffe Law, P.A.<br>The 110 Tower<br>Suite 1700<br>110 SE 6th Street<br>Fort Lauderdale, FL 33301<br>954-723-0007<br>Fax: 954-723-0033<br>Email: davidjjoffe@aol.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Mark J. O'Brien**<br>O'Brien Hatfield, PA<br>Suite 330<br>511 W Bay St<br>Tampa, FL 33606-3533<br>813/228-6989<br>Fax: 866/202-5964<br>Email: mjo@markjobrien.com<br>*TERMINATED: 07/16/2019*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1957-5800.F ENGAGING IN MONETARY TRANSACTIONS (1-4) | Imprisonment: 15 Months, all such terms to run concurrently; Supervised Release: 36 Months, all such terms to run concurrently; Fine: Waived; Special Assessment: $400.00 |

**Highest Offense Level (Opening)**

Felony

**Terminated Counts** | **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints** | **Disposition**

None

---

**Plaintiff**

**USA** represented by **Gregory Davis Pizzo**
US Attorney's Office - FLM
Suite 3200
400 N Tampa St
Tampa, FL 33602-4798
813-274-6000
Fax: 813-274-6178
Email: gregory.pizzo@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Kelley Clement Howard-Allen**
U.S. Attorney's Office
Middle District of Florida
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
813/274-6000
Fax: 813/274-6178
Email: kelley.howard@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Suzanne C. Nebesky**
US Attorney's Office - FLM
Suite 3200
400 N Tampa St
Tampa, FL 33602-4798
813/274-6000
Email: suzanne.nebesky@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/04/2018 | 1 | INFORMATION as to Konrad Guzewicz (1) count(s) 1-4. (LSS) (Entered: 06/05/2018) |
| 06/04/2018 | 2 | WAIVER OF INDICTMENT by Konrad Guzewicz (LSS) (Entered: 06/05/2018) |

| | | |
|---|---|---|
| 06/06/2018 | 3 | NOTICE OF ATTORNEY APPEARANCE Suzanne C. Nebesky appearing for USA. (Nebesky, Suzanne) (Entered: 06/06/2018) |
| 06/06/2018 | 4 | PLEA AGREEMENT re: count(s) One through Four of the Information as to Konrad Guzewicz (Howard-Allen, Kelley) (Entered: 06/06/2018) |
| 06/06/2018 | 5 | NOTICE of pendency of related cases re order of compliance to Local Rule as to Konrad Guzewicz by USA. Related case(s): Yes (Howard-Allen, Kelley) (Entered: 06/06/2018) |
| 06/06/2018 | 6 | NOTICE OF HEARING as to Konrad Guzewicz: Change of Plea Hearing / Initial Appearance set for 6/28/2018 at 11:00 AM in Tampa Courtroom 12 B before Magistrate Judge Christopher P. Tuite. (LYB) (Entered: 06/06/2018) |
| 06/07/2018 | 7 | NOTICE OF ATTORNEY APPEARANCE: Mark J. O'Brien appearing for Konrad Guzewicz (O'Brien, Mark) (Entered: 06/07/2018) |
| 06/12/2018 | 8 | NOTICE OF RESCHEDULING HEARING (AS TO TIME ONLY): The Change of Plea hearing previously scheduled for 11:00 AM on 6/28/18 is rescheduled as to Konrad Guzewicz. New hearing time: Change of Plea Hearing / Initial Appearance set for 6/28/2018 at 9:00 AM in Tampa Courtroom 12 B before Magistrate Judge Christopher P. Tuite. (LYB) (Entered: 06/12/2018) |
| 06/28/2018 | 9 | Minute Entry for proceedings held before Magistrate Judge Christopher P. Tuite: Initial Appearance as to Konrad Guzewicz held on 6/28/2018, Change of Plea Hearing as to Konrad Guzewicz held on 6/28/2018. (DIGITAL) (LMD) (Entered: 06/28/2018) |
| 06/28/2018 | 10 | CONSENT regarding entry of a plea of guilty as to Konrad Guzewicz (LMD) (Entered: 06/28/2018) |
| 06/28/2018 | 11 | CONSENT to institute presentence investigation report as to Konrad Guzewicz. (LMD) (Entered: 06/28/2018) |
| 06/28/2018 | 12 | **REPORT AND RECOMMENDATIONS concerning Plea of Guilty re: count(s) 1-4 of the Information as to Konrad Guzewicz. Signed by Magistrate Judge Christopher P. Tuite on 6/28/2018. (LMD)** (Entered: 06/28/2018) |
| 06/28/2018 | 15 | **ORDER Setting Conditions of Release as to Konrad Guzewicz. Signed by Magistrate Judge Christopher P. Tuite on 6/28/2018. (LYB)** (Entered: 06/28/2018) |
| 06/28/2018 | 16 | APPEARANCE BOND entered as to Konrad Guzewicz in amount of $10,000. (LYB) (Entered: 06/28/2018) |
| 06/28/2018 | 17 | PLEA AGREEMENT *amended page 21* re: count(s) One through Four of the Information as to Konrad Guzewicz (Howard-Allen, Kelley) (Entered: 06/28/2018) |
| 06/28/2018 | 18 | ACCEPTANCE OF PLEA of guilty and adjudication of guilt re: counts One, Two, Three & Four of the Information as to Konrad Guzewicz. Signed by Judge Susan C Bucklew on 6/28/2018.(Sentencing set for 10/4/2018 at 9:00 AM in Tampa Courtroom 10 B before Judge Susan C Bucklew.) (MSS) (Entered: 06/29/2018) |
| 07/09/2018 | 20 | MOTION to Travel by Konrad Guzewicz. (O'Brien, Mark) Motions referred to Magistrate Judge Christopher P. Tuite. (Entered: 07/09/2018) |
| 07/09/2018 | 21 | **ENDORSED ORDER granting 20 Motion to Travel as to Konrad Guzewicz. Signed by Magistrate Judge Christopher P. Tuite on 7/9/2018. (LYB)** (Entered: 07/09/2018) |
| 07/26/2018 | 22 | MOTION for Forfeiture of an Order of Forfeiture by USA as to Konrad Guzewicz. (Nebesky, Suzanne) (Entered: 07/26/2018) |
| 07/26/2018 | 23 | **ORDER OF FORFEITURE granting 22 Motion for Forfeiture of Property as to** |

| | | |
|---|---|---|
| | | **Konrad Guzewicz (1). Signed by Judge Susan C Bucklew on 7/26/2018. (MSS)** (Entered: 07/26/2018) |
| 08/23/2018 | 24 | RULE 32(e)(2) INITIAL PRESENTENCE INVESTIGATION REPORT as to Konrad Guzewicz. E-copies made available to selected parties.(MF) (Entered: 08/23/2018) |
| 08/31/2018 | 25 | Unopposed MOTION to Continue Sentencing by Konrad Guzewicz. (O'Brien, Mark) (Entered: 08/31/2018) |
| 09/04/2018 | 26 | **ENDORSED ORDER denying without prejudice 25Defendant's Unopposed Motion to Continue Sentencing Hearing as to Konrad Guzewicz (1). The Defendant seeks to continue the sentencing from October 4, 2018 to January 2019 and has stated the Government is in agreement, but Defendant has not stated a reason the sentencing needs to be continued.Signed by Judge Susan C Bucklew on 9/4/2018. (Bucklew, Susan)** (Entered: 09/04/2018) |
| 09/06/2018 | 27 | Unopposed MOTION to Continue Sentencing by Konrad Guzewicz. (O'Brien, Mark) (Entered: 09/06/2018) |
| 09/07/2018 | 28 | **ENDORSED ORDER granting 27 Motion to Continue sentencing as to Konrad Guzewicz (1). Sentencing is rescheduled for 1/3/2019 at 9:00 a.m. Signed by Judge Susan C Bucklew on 9/7/2018. (MSS)** (Entered: 09/07/2018) |
| 09/07/2018 | 29 | NOTICE OF RESCHEDULING HEARING: The Sentencing hearing previously scheduled for 10/4/2018 is rescheduled as to Konrad Guzewicz. New hearing date and time:Sentencing set for 1/3/2019 at 9:00 AM in Tampa Courtroom 10 B before Judge Susan C Bucklew. (Counsel of record and/or the United States Probation Office shall contact chambers immediately should it be anticipated that this hearing will exceed thirty (30) minutes.)(MSS) (Entered: 09/07/2018) |
| 12/14/2018 | 30 | Unopposed MOTION to Continue Sentencing by Konrad Guzewicz. (O'Brien, Mark) (Entered: 12/14/2018) |
| 12/14/2018 | 31 | **ENDORSED ORDER granting 30 Motion to Continue sentencing as to Konrad Guzewicz (1). The sentencing hearing is rescheduled for June 4, 2019 at 8:30 a.m. No further continuances will be granted. Signed by Judge Susan C. Bucklew on 12/14/2018. (MSS)** (Entered: 12/14/2018) |
| 12/14/2018 | 32 | NOTICE OF RESCHEDULING HEARING: The Sentencing hearing previously scheduled for 1/3/19 is rescheduled as to Konrad Guzewicz. New hearing date and time:Sentencing set for 6/4/2019 at 8:30 AM in Tampa Courtroom 10 B before Judge Susan C. Bucklew. (MSS) (Entered: 12/14/2018) |
| 03/29/2019 | 33 | US Marshal 285 form for funds $10,000.00 deposited into the AFF on 3/28/2019 as to Konrad Guzewicz. (LSS) (Entered: 04/03/2019) |
| 05/09/2019 | 34 | US Marshal 285 form for Execution of Order of Forfeiture; executed on 5/8/19 as to Konrad Guzewicz. (AG) (Entered: 05/09/2019) |
| 05/23/2019 | 35 | RULE 32(g) FINAL PRESENTENCE INVESTIGATION REPORT as to Konrad Guzewicz. E-copies made available to selected parties.(KP) (Entered: 05/23/2019) |
| 05/23/2019 | 37 | Unopposed MOTION to Continue Sentencing by Konrad Guzewicz. (O'Brien, Mark) (Entered: 05/23/2019) |
| 05/24/2019 | 38 | US Marshal 285 form for Check Deposit as to Konrad Guzewicz. (JCG) (Entered: 05/28/2019) |
| 05/30/2019 | 39 | **ENDORSED ORDER GRANTING 37 Unopposed Motion to Continue Sentencing as to Konrad Guzewicz (1). The sentencing hearing currently set for June 4, 2019 is** |

| | | |
|---|---|---|
| | | **continued to July 2, 2019 at 9:00AM. Signed by Judge Susan C. Bucklew on 5/30/2019. (Bucklew, Susan)** (Entered: 05/30/2019) |
| 05/31/2019 | 40 | NOTICE OF RESCHEDULING HEARING: The Sentencing hearing previously scheduled for 6/4/19 is rescheduled as to Konrad Guzewicz. New hearing date and time:Sentencing set for 7/2/2019 at 9:00 AM in Tampa Courtroom 10 B before Judge Susan C. Bucklew. (MSS) (Entered: 05/31/2019) |
| 06/27/2019 | 41 | MOTION to recognize defendants substantial assistance pursuant to Rule 5k1.1 by USA as to Konrad Guzewicz. (Howard-Allen, Kelley) (Entered: 06/27/2019) |
| 07/01/2019 | 42 | SENTENCING MEMORANDUM by Konrad Guzewicz (Attachments: # 1 Exhibit Broken Windows, # 2 Exhibit Dead Rabbit, # 3 Exhibit Mental Health Record - Redacted, # 4 Exhibit Character Letter - Wife)(O'Brien, Mark) (Entered: 07/01/2019) |
| 07/02/2019 | 43 | **ORAL ORDER granting 41 MOTION to recognize defendant's substantial assistance pursuant to Rule 5k1.1, departed 4 levels as to Konrad Guzewicz (1). Signed by Judge Susan C. Bucklew on 7/2/2019. (MSS)** (Entered: 07/02/2019) |
| 07/02/2019 | 44 | Minute Entry for proceedings held before Judge Susan C. Bucklew: SENTENCING held on 7/2/2019 for Konrad Guzewicz (1), Count(s) 1-4, Imprisonment: 15 Months, all such terms to run concurrently; Supervised Release: 36 Months, all such terms to run concurrently; Fine: Waived; Special Assessment: $400.00. Court Reporter: Sharon A. Miller (MSS) (Entered: 07/02/2019) |
| 07/02/2019 | 45 | **JUDGMENT as to Konrad Guzewicz (1), Count(s) 1-4, Imprisonment: 15 Months, all such terms to run concurrently; Supervised Release: 36 Months, all such terms to run concurrently; Fine: Waived; Special Assessment: $400.00 Signed by Judge Susan C. Bucklew on 7/2/2019. (MSS)** (Entered: 07/02/2019) |
| 07/02/2019 | 46 | STATEMENT OF REASONS as to Konrad Guzewicz. E-copies made available to selected parties. (MSS) (Entered: 07/02/2019) |
| 07/03/2019 | 47 | NOTICE OF APPEAL by Konrad Guzewicz re 45 Judgment Filing fee not paid. (Joffe, David) (Entered: 07/03/2019) |
| 07/05/2019 | 48 | TRANSMITTAL of initial appeal package as to Konrad Guzewicz to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 47 Notice of Appeal. Eleventh Circuit Transcript information form forwarded to pro se litigants and available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. (LSS) (Entered: 07/05/2019) |
| 07/09/2019 | | USCA Case Number as to Konrad Guzewicz. USCA Number: 19-12554-F for 47 Notice of Appeal filed by Konrad Guzewicz. (JNB) (Entered: 07/09/2019) |
| 07/10/2019 | 49 | USCA Appeal Fees received $ 505, receipt number TPA057256 as to Konrad Guzewicz re 47 Notice of Appeal (ARC) (Entered: 07/10/2019) |
| 07/11/2019 | 50 | MOTION to Release Bond - *Continued Release on Bond Pending Resolution of Appeal* by Konrad Guzewicz. (Joffe, David) Motions referred to Magistrate Judge Christopher P. Tuite. (Entered: 07/11/2019) |
| 07/11/2019 | 51 | TRANSCRIPT information form filed by Konrad Guzewicz for proceedings held on 07/02/2019, 06/28/2019 before Judge Hon. Susan C. Buckley and Hon. Christopher Tuite re 47 Notice of Appeal. USCA number: 19-12554 (Joffe, David) (Entered: 07/11/2019) |
| 07/15/2019 | 53 | US Marshal 285 form for Check Deposit of $5,000 as to Konrad Guzewicz. (CTR) (Entered: 07/16/2019) |
| 07/15/2019 | 54 | US Marshal 285 form for Check Deposit of $2,000 as to Konrad Guzewicz. (CTR) |

| | | |
|---|---|---|
| | | (Entered: 07/16/2019) |
| 07/15/2019 | 55 | US Marshal 285 form for Check Deposit of $1,000 as to Konrad Guzewicz. (CTR) (Entered: 07/16/2019) |
| 07/16/2019 | 52 | MOTION to Withdraw as Attorney by Mark J. O'Brien. by Konrad Guzewicz. (O'Brien, Mark) Motions referred to Magistrate Judge Christopher P. Tuite. (Entered: 07/16/2019) |
| 07/16/2019 | 56 | **ORDER denying 50 MOTION to Release Bond - Continued Release on Bond Pending Resolution of Appeal by Konrad Guzewicz. Signed by Judge Susan C. Bucklew on 7/16/2019. (DMB)** (Entered: 07/16/2019) |
| 07/16/2019 | 57 | **ENDORSED ORDER granting 52 Motion to Withdraw as Attorney. Mark J. O'Brien withdrawn from case as to Konrad Guzewicz. Signed by Magistrate Judge Christopher P. Tuite on 7/16/2019. (LYB)** (Entered: 07/16/2019) |
| 07/18/2019 | 58 | TRANSCRIPT of SENTENCING HEARING as to Konrad Guzewicz held on JULY 2, 2019 before Judge SUSAN C. BUCKLEW. Court Reporter/Transcriber SHARON A. MILLER, Telephone number 813-301-5041. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 8/8/2019, Redacted Transcript Deadline set for 8/19/2019, Release of Transcript Restriction set for 10/16/2019. (SAM) (Entered: 07/18/2019) |
| 07/18/2019 | 59 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Konrad Guzewicz. Court Reporter: Sharon A. Miller (SAM) (Entered: 07/18/2019) |
| 07/25/2019 | 60 | COURT REPORTER ACKNOWLEDGEMENT by Bill Jones re 47 Notice of Appeal as to Konrad Guzewicz. Estimated transcript filing date: 08-25-19. USCA number: 19-12554-F. (HWJ) (Entered: 07/25/2019) |
| 07/26/2019 | 61 | COURT REPORTER ACKNOWLEDGEMENT by SHARON A. MILLER re 47 Notice of Appeal as to Konrad Guzewicz. Estimated transcript filing date: JULY 18, 2019. USCA number: 19-12554-F. (SAM) (Entered: 07/26/2019) |
| 07/26/2019 | 62 | NOTIFICATION that transcript has been filed by SHARON A. MILLER re: 47 Notice of Appeal as to Konrad Guzewicz USCA number: 19-12554-F (SAM) (Entered: 07/26/2019) |
| 07/30/2019 | 63 | USCA Order: Motion for release pending appeal filed by Appellant Konrad Guzewicz is DENIED re 47 Notice of Appeal. USCA number: 19-12554-F. (KE) (Entered: 07/30/2019) |

## PACER Service Center

### Transaction Receipt

08/06/2019 13:12:29

| | | | |
|---|---|---|---|
| **PACER Login:** | djj0814164:4474198:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 8:18-cr-00265-SCB-CPT |
| **Billable** | 5 | **Cost:** | 0.50 |

| Pages: | | | |
|---|---|---|---|

TAB 2

FILED

2018 JUN -4 PM 4:25

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8:18 cr 265 T24 MAP
18 U.S.C. § 1957

KONRAD GUZEWICZ

## INFORMATION

The United States Attorney charges:

## COUNTS ONE THROUGH FOUR

### A. Introduction

At times relevant to this Information:

1. Defendant KONRAD GUZEWICZ was a resident of the Middle District of Florida who owned and operated Pinellas County businesses known as Onyx Automotive and AK Tire and Rims with his wife, A.W. GUZEWICZ maintained and controlled bank accounts associated with these businesses, including Bank of America accounts ending in 7106 and 9813, as well as personal accounts at Pinellas Federal Credit Union ending in 1670 and Suncoast Federal Credit Union ending in 2798.

### B. Transactions

2. On or about the dates set forth below, in the Middle District of Florida and elsewhere, the defendant,

KONRAD GUZEWICZ,

did knowingly engage and attempt to engage in the monetary transactions described below, and aided and abetted others in engaging in the monetary transactions described below, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, which property was, in fact, derived from specified unlawful activity, that is, conspiracy, possession with intent to distribute, and distribution of controlled substances, in violation of 21 U.S.C. §§ 846 and 841, specifically:

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|---|---|---|---|
| ONE | June 18, 2015 | $30,000 | Official check number 0000360763 payable to Dion Fisher from Defendant and AW drawn on Pinellas County Federal Credit Union and deposited in Dion Fisher Hancock Bank account ending in 9814 |
| TWO | July 15 , 2015 | $30,000 | Check number 1743 from Onyx Automotive Bank of America account ending in 7106 written to Dion Fisher, with "Loan" in memo line, deposited in Dion Fisher Hancock Bank account ending in 9814 |

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|---|---|---|---|
| **THREE** | July 24, 2015 | $30,000 | Check number 5730 from AK Tire & Rims LLC Bank of America account ending in 9813 written to Dion Fisher, with "Loan Payment" in memo line, deposited in Dion Fisher Hancock Bank account ending in 9814 |
| **FOUR** | August 24, 2015 | $30,000 | Check number 1008 from Defendant and AW Suncoast Credit Union account ending in 2798 written to Dion Fisher, with "Loan Payment" in memo line, deposited in Dion Fisher Hancock Bank account ending in 9814 |

In violation of 18 U.S.C. §§ 1957 and 2.

## FORFEITURE

1. The allegations contained in Counts One through Four of this Information are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(1).

2. Upon conviction of a violation of, or a conspiracy to violate, 18 U.S.C. § 1957, the defendant,

KONRAD GUZEWICZ,

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense and any property traceable to such property.

3. The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of $120,000, which represents the amount involved in the offenses.

4. If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third party;
c. has been placed beyond the jurisdiction of the court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

MARIA CHAPA LOPEZ
United States Attorney

By: ______________________________
Kelley C. Howard-Allen
Assistant United States Attorney

By: ______________________________
Greg Pizzo
Assistant United States Attorney

By: ______________________________
Jay G. Trezevant
Assistant United States Attorney
Chief, Economic Crimes Section

*T:_Cases\Criminal Cases\G\GUZEWICZ, Konrad_2018R01162_GDP\p_Information as to Konrad Guzwisz-Final.docx*

TAB 3

AO 245B (Rev 02/18) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

KONRAD GUZEWICZ

**JUDGMENT IN A CRIMINAL CASE**

CASE NUMBER: 8:18-cr-265-T-24CPT
USM NUMBER: 70689-018

Defendant's Attorney: Mark O'Brien, Ret.

THE DEFENDANT:

Pleaded **Guilty** to Counts One, Two, Three and Four of the Information.

| TITLE & SECTION | NATURE OF OFFENSE | OFFENSE ENDED | COUNT |
|---|---|---|---|
| 18 U.S.C. §§ 1957 & 2 | Money laundering | June 18, 2015 | One |
| 18 U.S.C. §§ 1957 & 2 | Money laundering | July 15, 2015 | Two |
| 18 U.S.C. §§ 1957 & 2 | Money laundering | July 24, 2015 | Three |
| 18 U.S.C. §§ 1957 & 2 | Money laundering | August 24, 2015 | Four |

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in economic circumstances.

Date of Imposition of Sentence: July 2, 2018

**SUSAN C. BUCKLEW**
**UNITED STATES DISTRICT JUDGE**
DATE: July 2, 2019

Defendant: KONRAD GUZEWICZ
Case No.: 8:18-cr-265-T-24CPT



## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: **FIFTEEN (15) MONTHS** as to Counts One through Four, all such terms to run concurrently.

_X_ The court makes the following recommendations to the Bureau of Prisons: Confinement at FCI Coleman, Florida.

_X_ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons.

_X_ as notified by the United States Marshal.
__ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

______________________________________________________________________

Defendant delivered on ____________________ to ____________________________

at ____________________________________, with a certified copy of this judgment.

________________________________________
UNITED STATES MARSHAL

By:____________________________________
DEPUTY UNITED STATES MARSHAL

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of THREE (3) YEARS as to Counts 1 - 4, all such terms to run concurrently.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
4. You must cooperate in the collection of DNA as directed by the probation officer.

You must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

Defendant: KONRAD GUZEWICZ
Case No.: 8:18-cr-265-T-24CPT



## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. I understand additional information regarding these conditions is available at the www.uscourts.gov.

Defendant's Signature ______________________________ Date ____________________

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall also comply with the following additional conditions of supervised release:

X You must participate, as directed by the Probation Officer, in a substance abuse program (outpatient and/or inpatient) and follow the Probation Officers instructions regarding the implementation of this court directive. Further, you shall be required to contribute to the costs of services for such treatment not to exceed an amount determined reasonable by the Probation Officer's Sliding Scale for Substance Abuse Treatment Services. Upon completion of a drug or alcohol dependency treatment program you are directed to submit to testing for the detection of substance use or abuse not to exceed 104 tests per year.

X You must participate as directed in a program of mental health treatment if necessary (outpatient and/or inpatient) and follow the Probation Officer's instructions regarding the implementation of this court directive. Further, the defendant shall be required to contribute to the costs of services for such treatment not to exceed an amount determined reasonable to by Probation Officer based on ability to pay or availability of third party payment and in conformance with the Probation Office's Sliding Scale for Mental Health Treatment Services.

X You must provide the probation officer access to any requested financial information.

X You are prohibited from incurring new credit charges, opening additional lines of credit, acquisitions or obligating himself for any major purchases without approval of the probation officer.

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments.

| | Assessment | JVTA Assessment * | Fine | Total Restitution |
|---|---|---|---|---|
| **Totals:** | **$400.00** | **n/a** | **Waived** | **n/a** |

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

_X_ Lump sum payment of $ 400.00 due immediately.

Unless the court has expressly ordered otherwise, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

_X_ The defendant shall forfeit the defendant's interest in the following property to the United States:

**[SEE ATTACHED ORDER OF FORFEITURE DKT #23]**

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. Case No. 8:18-cr-265-T-24CPT

KONRAD GUZEWICZ

**ORDER OF FORFEITURE**

THIS CAUSE comes before the Court upon the United States of America's motion for an order of forfeiture against the defendant in the amount of $120,000.00.

Being fully advised of the relevant facts, the Court hereby finds that at least $120,000.00 in criminal proceeds was obtained and laundered by the defendant as a result of his participation in money laundering offenses, for which he pled guilty.

Accordingly, it is hereby:

ORDERED, ADJUDGED, and DECREED that for good cause shown, the United States' motion is GRANTED.

It is FURTHER ORDERED that, pursuant to 18 U.S.C. § 982(a)(1), and Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the defendant shall be held liable for an order of forfeiture in the amount of $120,000.00.

It is FURTHER ORDERED that, because the $120,000.00 was dissipated by

the defendant, the United States may seek, as a substitute asset, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), forfeiture of any of the defendant's property up to the value of $120,000.00.

It is FURTHER ORDERED that, upon entry, this order shall become a final order of forfeiture as to the defendant.

The Court retains jurisdiction to address any third party claim that may be asserted in these proceedings, to enter any further order necessary for the forfeiture and disposition of such property, and for any substitute assets that the United States may be entitled to seek up to the amount of the order of forfeiture.

DONE and ORDERED in Tampa, Florida, this 26 day of July, 2018.

SUSAN C. BUCKLEW
UNITED STATES DISTRICT JUDGE

Copies to:
Suzanne C. Nebesky, AUSA
Counsel of Record

TAB 4

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

vs. CASE NO. 8:18-cr-265-T-24CPT
June 18, 2018
Tampa, Florida
9:07 - 9:53 a.m.

KONRAD GUZEWICZ,

Defendant.
________________________________/

**TRANSCRIPT OF PLEA HEARING**
BEFORE THE HONORABLE CHRISTOPHER P. TUITE
UNITED STATES MAGISTRATE JUDGE

**APPEARANCES:**

For the Government: KELLEY CLEMENT HOWARD-ALLEN, ESQ.
GREGORY DAVIS PIZZO, ESQ.
Assistant U.S. Attorney
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
813/274-6000

For the Defendant: MARK J. O'BRIEN, ESQ.
O'Brien Hatfield, PA
511 West Bay Street, Suite 330
Tampa, Florida 33606
813/228-6989

Court Reporter: Howard W. Jones, RPR, FCRR
801 N. Florida Avenue, Suite 15A
Tampa, Florida 33602
813/301-5024

Proceedings transcribed via courtroom digital audio recording by transcriptionist using computer-aided transcription.

**P R O C E E D I N G S**

(Court called to order.)

THE COURT: Madam Clerk, could you please call the case?

THE DEPUTY CLERK: Case No. 8:18-cr-265-T-24CPT, United States of America vs. Konrad Guzewicz.

THE COURT: And could I have counsels' appearances for the record, please.

MS. HOWARD-ALLEN: Good morning, Your Honor, Kelley Howard-Allen on behalf of the United States.

THE COURT: Good morning, Ms. Howard.

MR. O'BRIEN: May it please the Court, my name is Mark O'Brien. Standing to my right, your left, is Konrad Guzewicz.

THE COURT: Good morning, Mr. O'Brien.

Good morning, Mr. Guzewicz.

THE DEFENDANT: Good morning.

THE COURT: You both can sit down. Thank you.

Mr. Guzewicz, how do you pronounce your last name? Am I doing an okay job with it?

THE DEFENDANT: Guzewicz.

THE COURT: Guzewicz?

THE DEFENDANT: Yes.

THE COURT: It's my understanding that you wish to enter a guilty plea today. Is that correct?

THE DEFENDANT: Correct, yes.

THE COURT: Before I can accept your guilty plea, the law requires that I make sure that you are pleading guilty freely and voluntarily and that there is a factual basis that supports your plea. To do that I'm going to ask you some questions, both about your case and about yourself.

If for whatever reason you don't understand a question that I ask you, just please let me know and I'll do my best to explain myself better.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Also, if at any point during this morning's proceedings you wish to speak with Mr. O'Brien about any matter, please kindly let me know that as well and I'll provide you with whatever time you need to speak with Mr. O'Brien.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: To impress upon you the importance of your answers to my questions, I'm going to ask you those questions while you're under oath. The significance of the oath is that if you knowingly answer any of my questions falsely, you could be subject to a prosecution for perjury or making a false statement.

Do you understand?

THE DEFENDANT: Yes, I do.

THE COURT: Madam Clerk, if you could please administer the oath.

(Defendant sworn by the Deputy Clerk.)

THE DEFENDANT: Yes.

THE COURT: Mr. -- I'm going to try this again -- Guzewicz.

THE DEFENDANT: Yes. Very good.

THE COURT: How old are you?

THE DEFENDANT: Thirty-six.

THE COURT: Thirty-six?

THE DEFENDANT: Yes.

THE COURT: And how far did you go in school?

THE DEFENDANT: Associate degree.

THE COURT: Associate's degree?

THE DEFENDANT: Yes.

THE COURT: Can you read and write in the English language?

THE DEFENDANT: Yes.

THE COURT: Mr. O'Brien, at any point during your representation of Mr. Guzewicz, have you had any difficulty communicating with him or any sense that he does not understand what the two of you have been talking about?

MR. O'BRIEN: No, Your Honor.

THE COURT: Thank you.

What is your full name, Mr. Guzewicz?

THE DEFENDANT: Konrad Paweo Guzewicz.

THE COURT: Okay. Thank you. Have you ever been treated for any mental illness or any addiction to a narcotic drug?

THE DEFENDANT: No.

THE COURT: Are you currently under the influence of any drug, medication, or alcoholic beverage?

THE DEFENDANT: No.

THE COURT: Is there anything else that might be affecting your ability to understand this morning's proceedings that you think I should know about?

THE DEFENDANT: No.

THE COURT: Is your mind clear?

THE DEFENDANT: Yes.

THE COURT: And of what country are you a citizen?

THE DEFENDANT: United States.

THE COURT: You have the right to enter your guilty plea before the District Judge who is assigned to your case. That would be Judge Bucklew. If you wish, however, you can enter your guilty plea before me. I am a Magistrate Judge, which is a judge of lesser authority. The District Judge, Judge Bucklew, is the one who will be sentencing you.

It's my understanding that you and Mr. O'Brien

have signed a form this morning indicating that you wish to plead guilty before me. Before signing this form, did you discuss the matter of pleading guilty before me with Mr. O'Brien at length?

THE DEFENDANT: Yes.

THE COURT: Is that still what you would like to do?

THE DEFENDANT: Yes.

THE COURT: Did anyone threaten, coerce, or force you in any way to get you to consent to pleading guilty before me?

THE DEFENDANT: No.

THE COURT: Other than what's in your plea agreement, I'll go through that with you shortly, did anyone make any promises to you to get you to consent to pleading guilty before me?

THE DEFENDANT: No.

THE COURT: Now, it's my understanding that you are pleading this morning by way of what's called an information rather than an indictment.

Is that your understanding as well?

THE DEFENDANT: Yes.

THE COURT: I'm going to review your rights in connection with that process.

You have the constitutional right to be charged by

indictment. An indictment is a formal charge that is returned by a grand jury.

A grand jury consists of between 16 and 23 persons who have been selected at random from the community. They meet in private and decide if there is probable cause to believe that a crime has been committed and if, in your case, being the defendant, if you have committed that crime. The grand jury can return an indictment only if at least 12 of its members concur in finding probable cause.

An information, on the other hand, is a formal accusation by the prosecutor or the United States Attorney charging you with a criminal offense. The prosecutor does not present the case to a grand jury for a probable cause determination. To be charged by information, you must waive your right to be charged by an indictment.

Do you understand your right to an indictment and have -- to have your case considered by a grand jury?

THE DEFENDANT: Yes.

THE COURT: Do you wish to waive your right to proceed by indictment and, instead, go forward by way of an information?

THE DEFENDANT: Yes.

THE COURT: It's my understanding and I have before me a form that you have signed entitled Waiver of Indictment that appears to bear your signature and that of

Mr. O'Brien.

Do you recall signing this form?

THE DEFENDANT: Yes.

THE COURT: And before you executed the form, did you discuss the matter at length with your attorney, Mr. O'Brien?

THE DEFENDANT: Yes.

THE COURT: Based upon the defendant's answers to my questions and the representations of counsel, I will now sign the waiver of indictment form.

And have done so.

Mr. Guzewicz, have you had an opportunity to review all of the facts and the evidence in this case with Mr. O'Brien?

THE DEFENDANT: Yes.

THE COURT: I'm sorry, was your answer yes?

THE DEFENDANT: Yes.

THE COURT: Have you discussed with your attorney all of your options in this case, including the option of taking your case to trial?

THE DEFENDANT: Yes.

THE COURT: Are you fully satisfied with the advice and representation you have received from Mr. O'Brien in connection with this case?

THE DEFENDANT: Yes.

THE COURT: As I mentioned before, it's my understanding that you have entered into a plea agreement with the government. I have that plea agreement before me. Do you have the plea agreement before yourself?

THE DEFENDANT: Yes.

THE COURT: It's my understanding that you have initialed each page of the plea agreement and have signed the end of the plea agreement. I'd like you to confirm here in open court this morning that it is in fact your initials on each page of the plea agreement and your signature at the end.

THE DEFENDANT: Yes, it is.

THE COURT: Did you read the plea agreement in its entirety before initialing each page and before signing the end of the agreement?

THE DEFENDANT: Yes.

THE COURT: And did you discuss the plea agreement at length with Mr. O'Brien before you initialed each page and before you signed the end?

THE DEFENDANT: Yes.

THE COURT: I'm going to summarize some of the terms of the plea agreement, not all of them. My goal is to make sure that you understand broad outlines of your plea agreement and that includes all the promises the government has made to you to persuade you to plead guilty.

If either you or Mr. O'Brien would like me to review additional terms other than those that I cover, I'll be happy to do so.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: By way of Count One of the plea agreement on page one, you're agreeing to plead guilty to Counts One through Four of the indictment, all of which charge you with money laundering on certain dates in violation of Section 1957 of Title 18 of the United States Code.

By way of paragraph four, you're agreeing to waive your right to be charged by way of indictment before a federal grand jury, as we have done this morning.

By way of paragraph five on page two, the government is agreeing not to charge you with the commission of any other federal criminal offenses that it knew about at the time of the execution of the plea agreement and that relate to the conduct which gave rise to the plea agreement.

By way of paragraph six, the government further promises to recommend to the Court that you be sentenced within your applicable advisory guideline range as determined by the Court.

By way of paragraph seven on page three, in the event no adverse information is received, the government

indicates that it will not oppose your request that you receive a two-level downward departure -- or adjustment, rather, for your acceptance of responsibility.

Paragraph seven further provides that if you meet certain conditions, the government further promises that it will file a motion requesting that the Court depart downwardly by an additional level for your acceptance of responsibility.

By way of paragraph eight on page four, you're agreeing to cooperate fully with the government in the investigation and prosecution of other persons and to testify subject to a prosecution for perjury and making a false statement fully and truthfully before any federal court or federal grand jury in connection with the charges in this case and other matters.

If your cooperation is completed prior to sentencing, the government promises that it will consider whether such cooperation qualifies as substantial assistance under its policies warranting the filing of a motion at the time of your sentencing recommending a downward departure from the applicable advisory guideline range determined by the Court or the imposition of any -- I'm sorry, the imposition of a sentence below any statutory mandatory minimum, or both.

The government makes a similar promise with

respect to substantial assistance that you may provide after your sentencing.

It's important that you understand that the determination as to whether you have provided substantial assistance and what relief you may get as a result is a matter that rests solely with the government and you cannot and will not be able to challenge that in any way.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: By way of paragraph nine, the government agrees that no self-incriminating information you may provide during the course of your cooperation and pursuant to this plea agreement shall be used in determining your applicable advisory guideline range.

Paragraph ten sets forth what will happen if your cooperation is not complete, full, and truthful.

Paragraph 11 indicates that your cooperation is limited in one respect; namely, that the government will not require that you testify against any family members on direct examination at trial. There is a caveat with respect to cross-examination.

By way of paragraph 12 on page nine, you agree to forfeit to the United States immediately and voluntarily any and all assets that are subject to forfeiture or portions thereof under the law, regardless of whether they are in the

possession of the government, yourself, or your nominees.

Paragraph 12 further provides that the assets to be forfeited specifically include, but are not limited to, an order of forfeiture in the amount of $120,000, which represents the proceeds that you admit you -- I'm sorry, which represents the proceeds that you admit directly participated or directly resulted from the money laundering, which is the subject of Counts One through Four. In that regard, you acknowledge and agree that you obtained and laundered this amount as part of the commission of those offenses and, as a result of acts and omissions of yourself, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence.

You further agree that under the law the government is entitled to forfeit any other property that you may have up to the amount of the proceeds that you obtained and laundered as a result of the conviction.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The second part of the plea agreement begins on page 13. The first paragraph -- paragraph one, rather, of the second part of the plea agreement indicates that you understand and agree that the Court shall order you to make restitution to any victim of the offense or offenses

pursuant to a particular statutory provision and may require that you do so under a separate statutory provision.

Paragraph one on page 13 further provides that on each count to which a plea of guilty is entered, that would be Counts One through Four, the Court shall impose a special assessment, which is mandatory, that applies to each count of conviction for a total amount of $400.

Paragraph two on page 14 provides that you understand that the offenses to which you are pleading guilty provide for the imposition of a term of supervised release upon any release from a term of imprisonment and that if you should violate any conditions of your release, you will be subject to a further term of imprisonment.

I want to turn your attention to paragraph six on page 16. That particular paragraph reiterates a representation that is made at a number of other points in the plea agreement; namely, it's understood by you and the government that the Court is neither a party to nor bound by this plea agreement, that is the Court may accept or reject it or defer a decision on the plea agreement until it has had an opportunity to review a presentence report.

You further understand and acknowledge by way of this paragraph that although the parties are permitted to make recommendations and present arguments to the Court regarding your sentence, in the end your sentence will be

determined solely by the Court.

Paragraph six additionally adds that you understand and acknowledge that any recommendations that are made by the government pursuant to this plea agreement are not binding on the Court and that should those recommendations be rejected, you will not be permitted to withdraw your plea of guilty pursuant to this plea agreement.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  And finally, paragraph eight on page 18 represents that this plea agreement is limited to the office of the United States Attorney for the Middle District of Florida and does not bind any other federal, state, or local prosecuting authorities.

Do you understand all of the terms of your plea agreement, including those that I have reviewed with you this morning?

THE DEFENDANT:  Yes.

THE COURT:  Has anyone made any other promises or representations to you to persuade you to plead guilty outside of those in the plea agreement?

THE DEFENDANT:  No.

THE COURT:  I'm sorry, was that a no?

THE DEFENDANT:  No.

THE COURT: I'm going to ask both the government and the defense if any promises or representations have been made to the defendant in connection with his guilty plea other than those that are contained in the plea agreement?

Ms. Howard?

MS. HOWARD-ALLEN: No, Your Honor.

THE COURT: Mr. O'Brien?

MR. O'BRIEN: No, Your Honor.

THE COURT: Mr. Guzewicz, has anyone threatened, coerced, or forced you in any way to get you to plead guilty in this case?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty freely and voluntarily?

THE DEFENDANT: Yes.

THE COURT: Is your decision to plead guilty one that you have made after having had ample time to talk about it with your attorney, Mr. O'Brien?

THE DEFENDANT: Yes.

THE COURT: The offenses to which you are pleading guilty are felony offenses. I want to make sure you understand that once you are adjudged guilty, that adjudication relative to those offenses may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, or the right to possess any kind of a

firearm.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: The penalties to which you are subject as a result of your pleas to Counts One through Four of the information are set forth in paragraph two at the bottom of page one of your plea agreement. In particular, Counts One through Four each carry a maximum sentence of ten years imprisonment, a fine of $250,000, a maximum fine of $250,000, or both, a term of supervised release of not more than three years, and a special assessment of $100.

As I stated to you earlier and as provided in that paragraph, with respect to certain offenses, the Court shall order you to make restitution to any victim or victims of the offenses. And with respect to other offenses, the Court may order you to make such restitution.

Do you understand all of the possible punishment consequences, which you are subject to as a result of your pleas of guilty, including those that I have reviewed with you this morning?

THE DEFENDANT: Yes.

THE COURT: I'm going to take a few minutes to explain the process that will follow this morning's proceeding.

If the Court accepts your guilty plea, a probation

officer will prepare a presentence report, the same report that I mentioned to you earlier, and that report will go to the District Judge, Judge Bucklew, who is the judge who will be sentencing you. The purpose of the presentence report is to assist the sentencing Judge in deciding what is the appropriate sentence to give you in this case.

The report will inform the Judge about the facts of your case, how the advisory Sentencing Guidelines apply to your case, at least in the probation officer's view, and it will also advise the Court of your background, your personal history, including any criminal record you may have.

It's important for you to understand that before the sentencing Judge sees this presentence report, you and Mr. O'Brien and the government will have ample opportunity to review it and go over it. If you have any objections to the report, you'll be able to present those objections to the probation officer who prepared the report. If the probation officer declines to change the report in accordance with your objections, you will have the right to take your objections directly to the sentencing Judge.

And just as you have a right to object to the report, so too does the government.

Do you understand this part of the process?

THE DEFENDANT: Yes.

THE COURT: At the time of your sentencing, the sentencing Judge will give you and Mr. O'Brien and the government an opportunity to present information and evidence that is relevant to the proceeding.

The government -- I'm sorry. The sentencing Judge will also then decide and resolve any outstanding objections that have been made and determine what your advisory sentencing guideline range is. She will then look to the sentencing statute and the factors that it contains and ultimately determine your sentence that she believes is reasonable under the law.

Do you understand this part of the process as I've described it to you?

THE DEFENDANT: Yes.

THE COURT: Now, Mr. O'Brien is a very experienced attorney and he may have given you an opinion about what your advisory guideline range might be. And he also may have given you an opinion about what your sentence might be. It's important for you to understand, though, that if your sentence is different than what you expected, you will not be allowed to withdraw your guilty pleas.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: I've also mentioned to you that the Sentencing Guidelines are advisory. That means that the

Court has the authority to depart upward or downward from the advisory sentencing guideline range she calculates.

Do you understand that the Sentencing Guidelines are advisory?

THE DEFENDANT: Yes.

THE COURT: Your paragraph has -- I'm sorry, your plea agreement, rather, has a paragraph called an appellate waiver relative to your sentence. That paragraph or provision is contained on page 17 of your agreement and can be found at paragraph seven. By way of that paragraph, you are largely waiving your right to appeal your sentence. In particular, by the terms of that paragraph and your agreement, you can only appeal your sentence if one of four events occurs:

First, that the sentencing Judge upwardly departs from the advisory sentencing guideline range he believes to apply in your case;

Two, the sentencing Judge imposes a sentence that is greater than the maximum sentence under the charging statute; or,

Third, your sentence violates the Eighth Amendment of the Constitution; or,

Fourth, the government appeals your sentence.

Do you understand by way of your plea agreement you are giving up the right to appeal your sentence unless

one of these four events occurs?

THE DEFENDANT: Yes.

THE COURT: By pleading guilty, you are not only admitting to the criminal charges contained in the information, you are also giving up a number of important constitutional rights. I'm going to review those rights with you now to make sure that you understand that you have those rights and that you understand as well that you are waiving or giving them up by pleading guilty.

You have the right to persist in a plea of not guilty;

You also have the right to a jury trial, at which the government would have to be -- would be required, rather, to prove the charges against you beyond a reasonable doubt and to the unanimous satisfaction of a jury;

You have the right to the effective assistance of counsel in your defense at all stages of the case, including at trial;

If you could not afford an attorney, you have the right to have an attorney appointed to represent you at no cost;

You have the right to see and to hear all the witnesses who testify against you and to cross-examine them, to challenge their stories;

You have the right as well to testify in your own

defense or, if you so choose, not to testify and the jury would be specifically instructed that it could not hold it against you if you elected not to testify;

Finally, you have the right to issue subpoenas to compel the attendance of witnesses in your own defense.

Do you understand that you have these important constitutional rights?

THE DEFENDANT: Yes.

THE COURT: Do you understand that by pleading guilty today, there will be no trial and you will be waiving or giving up these constitutional rights?

THE DEFENDANT: Yes.

THE COURT: The offenses to which you are pleading guilty are set forth in the information.

Mr. O'Brien, I assume that you've gone through the information at length with Mr. Guzewicz?

MR. O'BRIEN: I have, Judge.

THE COURT: I don't intend to read the information in its entirety.

Do you waive a full reading of the information?

MR. O'BRIEN: We absolutely waive a full reading of the information.

THE COURT: Essentially, Mr. Guzewicz, the information charges you with four counts of money laundering occurring on dates that are set forth on pages two and three

of the information.

For each of these counts in the information, there are certain essential elements that the government would be required to prove if this case went to trial. Those essential elements are set forth on page two of your plea agreement at paragraph three. I'm going to go through the essential elements now, again, all of which apply to Counts One, Two, Three, and Four.

If this case went to trial, the government would be required to prove the following five elements:

First, that you knowingly engaged or attempted to engage in a monetary transaction;

Second, that you knew the transaction involved property or funds that were the proceeds of some criminal activity;

Third, that the property had a value of more than $10,000;

Fourth, the property was in fact the proceeds of a conspiracy to -- I'm sorry, conspiracy to possess with the intent to distribute controlled substances and to distribute and manufacture controlled substances; and,

Fifth, the transaction took place in the United States.

Do you understand that the government would be required to prove each of these essential elements with

respect to Counts One through Four were this case to go to trial and the government would have to prove them beyond a reasonable doubt and to the unanimous satisfaction of a jury?

Do you understand?

THE DEFENDANT: Yes.

THE COURT: I mentioned to you at the beginning that one of the purposes of this morning's proceeding is to ensure that there is an independent basis in fact to support your plea. One of the ways that that is accomplished is for a factual basis to be included in the plea agreement and that has been done here on pages 20 through 24.

I see that your initials are on the bottom again of each of those pages, 20 through 24. Have you reviewed those facts in detail with your attorney, Mr. O'Brien?

THE DEFENDANT: Yes.

THE COURT: And did you initial each of those pages after reviewing them in detail with Mr. O'Brien?

THE DEFENDANT: Yes.

THE COURT: Do you have any disagreement with those facts?

THE DEFENDANT: No.

THE COURT: Are any of those facts not accurate or not true as they relate to you?

MR. O'BRIEN: Judge, may I have one moment,

please?

THE COURT: Sure.

(Pause in proceedings.)

MR. O'BRIEN: Your Honor, if we could orally amend one word in the plea agreement. I discussed this with Ms. Howard prior to today's hearing, I don't believe there's any issue with it.

On page 21, the first full paragraph, the line that starts, vehicles including an Audi R8 Quattro and Maserati, Maserati should be a Porsche Panamera, not -- not a Maserati.

MS. HOWARD-ALLEN: We can make that handwritten change or assign it, whatever the Court wishes.

THE COURT: It's up to the parties. You made a record of it here in the plea proceeding. I think the wise course would be to amend it, initial it, and then refile the plea agreement as an amended plea agreement.

MS. HOWARD-ALLEN: Can we do that at this time or should we do it after?

THE COURT: You can take care of the process of amending it by way of a handwritten notation with the parties' initials to that, including the defendant's. I think that's a wise thing to do.

And then, Ms. Howard, when you return to the office, you can simply file it via CM/ECF.

Mr. O'Brien, it sounds like what one might find in your garage.

MR. O'BRIEN: No, sir.

MS. HOWARD-ALLEN: Not in mine either.

MR. O'BRIEN: Just bicycles in mine, Judge. I'm trying to lose a couple of LBs.

THE COURT: No comment.

MS. HOWARD-ALLEN: Thank you, Your Honor.

MR. O'BRIEN: Thank you, Judge.

THE COURT: Mr. Guzewicz, other than that one change to modify the car, Maserati to the Porsche, are the facts that are contained on pages 20 through 24 in fact true?

MR. O'BRIEN: Judge, may we have one moment?

THE COURT: Sure.

(Pause in proceedings.)

MR. O'BRIEN: Thank you, Your Honor.

THE DEFENDANT: Everything is correct, yes.

THE COURT: Everything is correct, did you say?

THE DEFENDANT: Yes. The rest, yeah.

THE COURT: When you say the rest, outside of the change of the Maserati to the Porsche?

THE DEFENDANT: Right. Yes.

THE COURT: Mr. Guzewicz, I understand that this refers to money that was given to you from narcotics

distribution. Just to make clear, any dispute that the narcotics distribution in particular involved a conspiracy to possess with the intent to distribute controlled substances and to distribute and to manufacture such controlled substances?

Mr. O'Brien, any dispute in that regard?

MR. O'BRIEN: I have no dispute, Judge. I just don't think my client understands what Your Honor just said. If I could explain it to him?

THE COURT: Absolutely.

(Pause in proceedings.)

MR. O'BRIEN: Thank you, Your Honor.

THE COURT: Do you understand, Mr. Guzewicz?

THE DEFENDANT: Yes.

THE COURT: Okay. Any disagreement?

THE DEFENDANT: No.

THE COURT: It's also my understanding that the offense needs to involve a financial institution as defined under 31 U.S.C. 5312. Financial institution is defined therein, among other things, as any credit union, any insured bank, or any commercial bank or trust company.

It would appear to me on the face of the factual basis that Pinellas Federal Credit Union qualifies as a credit union under the statute and that the Hancock Bank similarly falls within the parameters of Section 5312.

Any dispute in that regard, Mr. O'Brien?

MR. O'BRIEN: No, Your Honor.

THE COURT: Okay. Mr. Guzewicz, at the beginning I said if you had any questions I'd be happy to answer them to the best of my ability. At this stage I've completed most of my colloquy. Do you have any questions for the Court in relation to your guilty plea?

THE DEFENDANT: No.

THE COURT: I'm ready to take your plea to the information and you can let me know when you're prepared to do so by standing up with you and Mr. O'Brien.

(Defendant and counsel comply.)

THE COURT: Mr. Guzewicz, how do you plead to Count One of the information, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: How do you plead to Count Two of the information, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: How do you plead to Count Three of the information, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: And how do you plead to Count Four of the information, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Mr. O'Brien, are you satisfied that

your client is pleading guilty knowingly and voluntarily and with a full understanding of the consequences of his guilty plea?

MR. O'BRIEN: I am, Your Honor.

THE COURT: You both may sit down. Thank you.

(Defendant and counsel comply.)

THE COURT: Based upon the defendant's answers to my questions, my observations of his demeanor, the representations of counsel, and the record before me, including the defendant's plea agreement and his waiver of indictment, it is the finding of the Court in this case that the defendant is fully competent and capable of entering an informed guilty plea, that he is aware of the nature of the charges to which he is pleading guilty and the consequences of his guilty plea, and that his plea of guilty is a knowing and voluntary one that is supported by an independent basis in fact that satisfies each of the essential elements of Counts One through Four of the information.

In my report to Judge Bucklew, I will, therefore, recommend that the defendant's plea of guilty to Counts One through Four be accepted, that he be adjudged guilty, and that his sentence be imposed accordingly.

Anything further from the parties?

Ms. Howard?

MS. HOWARD-ALLEN: Not with regard to the change

of plea, Your Honor.

THE COURT: Mr. O'Brien?

MR. O'BRIEN: No, Your Honor. Thank you.

THE COURT: The only outstanding issue deals with the defendant's release or detention. I see that Pretrial is here.

Ms. Roddy (ph), do you have a Pretrial Services report for --

UNIDENTIFIED SPEAKER: I provided the counsel the report when I walked in.

THE COURT: Do you have a copy for the Court?

UNIDENTIFIED SPEAKER: I have one if he needs it.

THE COURT: Thank you.

Thank you very much.

Mr. O'Brien, have you had an opportunity to review the Pretrial Services report with your client?

MR. O'BRIEN: I have, Your Honor.

THE COURT: Okay. I have not reviewed it. Why don't we take a five-minute recess and then I'll return to the bench.

(A brief recess was taken, after which the following proceedings were had in open court.)

THE COURT: Ms. Howard, Mr. O'Brien said he had an opportunity to review the report with his client. Have you had an adequate opportunity to review it as well?

MS. HOWARD-ALLEN: I have, Your Honor.

THE COURT: And what's the government's position with respect to the defendant's release or detention?

MS. HOWARD-ALLEN: Your Honor, obviously, we have been dealing with Mr. O'Brien and Mr. Guzewicz for a significant amount of time, so we have no concerns regarding his -- that he will show up in court. So we suggest a 10,000-dollar signature bond.

I think he had his passport in his possession and I think he's already given it to Pretrial. We would obviously recommend that so that his -- any foreign travel is not permitted.

And I understand that Mr. -- that there was a firearm in the house and I think Mr. O'Brien already -- and Mr. Guzewicz already made arrangements here today to have that removed.

And then there was a suggestion in the Pretrial Services report for mental health and I suggest that he be evaluated for that purpose, Your Honor.

THE COURT: Mr. O'Brien?

MR. O'BRIEN: Agreed. And one additional point. Mr. Guzewicz has an expired Polish passport. He will bring that to Pretrial Services tomorrow morning if Your Honor is okay with that and turn that over as well.

THE COURT: Okay. Thank you, Mr. O'Brien.

Ms. Howard, don't you like it when you're covering a case and the person who actually has the case wanders in at the very end of it?

MS. HOWARD-ALLEN: Well, Your Honor, we are actually both co-counsel on this and so I am -- I'm noting that we're almost done, but he had an earlier hearing, so he was attempting to be here at the beginning, but --

MR. PIZZO: Good morning, Judge.

THE COURT: Good morning, Mr. Pizzo. How are you?

MR. PIZZO: Good. How are you?

MS. HOWARD-ALLEN: He had a delayed hearing as well.

THE COURT: Mr. O'Brien, any objection to a 10,000-dollar signature bond in addition to other conditions?

MR. O'BRIEN: No, Your Honor.

THE COURT: Mr. Guzewicz, I'm going to release you subject to the standard conditions and, in addition, the following special conditions:

One, that you execute a 10,000-dollar signature bond;

That you report to Pretrial Services as directed;

You surrender any passports, whether they've expired or not;

You also not apply for any new travel documents;

Your travel will be restricted to the Middle District of Florida;

I'm going to direct that you undergo substance abuse evaluation and treatment as directed by Pretrial;

You submit to any method of testing as directed by Pretrial;

That the cost in both cases is to be borne by you as determined by Pretrial; and,

To participate in mental health evaluation and treatment as directed by Pretrial.

In addition, as Ms. Howard pointed out, Mr. Guzewicz, in light of the fact that you'll be supervised by Pretrial, for all concerned, as an additional condition, it's a good idea to surrender the firearm, which I understand you've already begun the process of doing.

Anything further from the government as far as release conditions?

MS. HOWARD-ALLEN: No, Your Honor.

THE COURT: Mr. O'Brien?

MR. O'BRIEN: No, Your Honor.

THE COURT: Any objections?

MR. O'BRIEN: No, Your Honor.

THE COURT: Okay. Mr. Guzewicz, you'll be released and good luck to you.

THE DEFENDANT: Thank you very much.

THE COURT: Anything further?

MS. HOWARD-ALLEN: No, Your Honor.

THE COURT: Mr. O'Brien?

MR. O'BRIEN: No, Your Honor. May I be excused?

THE COURT: Yes. We'll be in recess.

(Proceedings concluded.)

UNITED STATES DISTRICT COURT )
)
MIDDLE DISTRICT OF FLORIDA )

REPORTER TRANSCRIPT CERTIFICATE

I, Howard W. Jones, Official Court Reporter for the United States District Court, Middle District of Florida, certify, pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcription of the stenographic notes taken by the undersigned in the above-entitled matter (Pages 1 through 34 inclusive) and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States of America.

/s Howard W. Jones

______________________________
Howard W. Jones, RPR, FCRR
Official Court Reporter
United States District Court
Middle District of Florida
Tampa Division
Date: ___/___/____

## $

$10,000 [1] 23/17
$100 [1] 17/11
$120,000 [1] 13/4
$250,000 [2] 17/9 17/10
$400 [1] 14/7

## /

/s [1] 35/10

## 1

10,000-dollar [3] 31/8 32/14 32/20
11 [1] 12/17
12 [3] 7/8 12/22 13/2
13 [2] 13/22 14/3
14 [1] 14/8
15A [1] 1/20
16 [2] 7/3 14/15
17 [1] 20/9
18 [3] 1/5 10/10 15/12
1957 [1] 10/10

## 2

20 [3] 24/12 24/14 26/12
2018 [1] 1/5
21 [1] 25/8
23 [1] 7/3
24 [3] 24/12 24/14 26/12
24CPT [2] 1/5 2/5
28 [1] 35/6

## 3

31 [1] 27/19
3200 [1] 1/15
330 [1] 1/18
33602 [2] 1/15 1/21
33606 [1] 1/18
34 [1] 35/7

## 4

400 [1] 1/15

## 5

5024 [1] 1/21
511 [1] 1/18
5312 [2] 27/19 27/25

## 6

6000 [1] 1/16
6989 [1] 1/19

## 7

753 [1] 35/6

## 8

801 [1] 1/20
813/228-6989 [1] 1/19
813/274-6000 [1] 1/16
813/301-5024 [1] 1/21
8:18-cr-265-T-24CPT [2] 1/5 2/5

## 9

9:07 [1] 1/6
9:53 [1] 1/6

## A

a.m [1] 1/6
ability [2] 5/11 28/5
able [2] 12/7 18/17
about [10] 3/6 3/6 3/14 4/23 5/12 10/17 16/17 18/7 19/16 19/18
above [1] 35/7
above-entitled [1] 35/7
absolutely [2] 22/21 27/10
abuse [1] 33/4
accept [2] 3/2 14/19
acceptance [2] 11/3 11/7
accepted [1] 29/21
accepts [1] 17/25
accomplished [1] 24/10
accordance [1] 18/20
accordingly [1] 29/22
accurate [1] 24/23
accusation [1] 7/11
acknowledge [3] 13/9 14/22 15/3
activity [1] 23/15
acts [1] 13/11
actually [2] 32/2 32/5
addiction [1] 5/4
addition [3] 32/14 32/18 33/11
additional [4] 10/2 11/7 31/21 33/13
additionally [1] 15/2
adds [1] 15/2
adequate [1] 30/25
adjudged [2] 16/22 29/21
adjudication [1] 16/23
adjustment [1] 11/2
administer [1] 4/3
admit [2] 13/5 13/6
admitting [1] 21/4
adverse [1] 10/25
advice [1] 8/23
advise [1] 18/10
advisory [10] 10/22 11/21 12/14 18/8 19/7 19/17 19/25 20/2 20/4 20/16
affecting [1] 5/11
afford [1] 21/19
after [5] 12/1 16/17 24/18 25/19 30/21
again [3] 4/6 23/7 24/13
against [4] 12/19 21/14 21/23 22/3
agree [4] 12/22 13/9 13/15 13/24
Agreed [1] 31/21
agreeing [4] 10/7 10/12 10/16 11/10
agreement [38]
agrees [1] 12/11
aided [1] 1/24
alcoholic [1] 5/8
all [12] 8/13 8/19 9/22 9/24 10/8 12/24 15/16 17/17 21/17 21/22 23/7 33/13
ALLEN [2] 1/13 2/10
allowed [1] 19/21
almost [1] 32/6
already [4] 31/10 31/14 31/15 33/15
also [9] 3/12 18/10 19/6 19/17 19/24 21/5 21/12 27/17 32/25
although [1] 14/23
am [4] 2/20 5/21 29/4 32/5
amend [2] 25/4 25/16
amended [1] 25/17
amending [1] 25/21
Amendment [1] 20/21
AMERICA [3] 1/3 2/6 35/9
among [1] 27/20
amount [5] 13/4 13/10 13/17 14/7 31/6
ample [2] 16/17 18/15
answer [3] 3/22 8/16 28/4
answers [3] 3/20 8/8 29/7
any [50]
anyone [4] 6/9 6/14 15/20 16/9
anything [4] 5/10 29/23 33/16 34/1
appeal [3] 20/11 20/13 20/25
appeals [1] 20/23
appear [1] 27/22
appearances [2] 1/12 2/7
appears [1] 7/25
appellate [1] 20/7
applicable [3] 10/22 11/21 12/14
applies [1] 14/6
apply [4] 18/8 20/17 23/7 32/25
appointed [1] 21/20
appropriate [1] 18/6
are [41]
arguments [1] 14/24
arrangements [1] 31/15
as [37]
ask [4] 3/5 3/8 3/20 16/1
assessment [2] 14/6 17/11
assets [2] 12/24 13/2
assign [1] 25/13
assigned [1] 5/19
assist [1] 18/5
assistance [4] 11/18 12/1 12/5 21/16
Assistant [1] 1/14
Associate [1] 4/14
Associate's [1] 4/15
assume [1] 22/15
attempted [1] 23/11
attempting [1] 32/7
attendance [1] 22/5
attention [1] 14/14
attorney [10] 1/14 7/11 8/5 8/18 15/13 16/18 19/16 21/19 21/20 24/15
Audi [1] 25/9
audio [1] 1/24
authorities [1] 15/15
authority [2] 5/22 20/1
Avenue [1] 1/20
aware [1] 29/13

## B

background [1] 18/10
bank [3] 27/21 27/21 27/24
Based [2] 8/8 29/7
basis [5] 3/5 24/9 24/11 27/23 29/16
Bay [1] 1/18
be [48]
bear [1] 7/25
been [9] 4/23 5/3 7/4 7/6 13/12 16/2 19/7 24/12 31/5
before [22] 1/11 3/2 5/19 5/21 6/2 6/2 6/3 6/11 6/16 7/24 8/4 9/1 9/3 9/4 9/14 9/14 9/18 9/19 10/13 11/13 18/13 29/9
beginning [3] 24/7 28/3 32/7
begins [1] 13/22
begun [1] 33/15
behalf [1] 2/10
being [1] 7/7
believe [2] 7/6 25/6
believes [2] 19/10 20/16
below [1] 11/23
bench [1] 30/20
best [2] 3/9 28/5
better [1] 3/9
between [1] 7/3
beverage [1] 5/8
beyond [2] 21/14 24/2
bicycles [1] 26/5
bind [1] 15/14
binding [1] 15/5
bond [3] 31/8 32/14 32/21
borne [1] 33/7
both [8] 2/18 3/6 11/24 16/1 17/10 29/5 32/5 33/7
bottom [2] 17/6 24/13
bound [1] 14/18
brief [1] 30/21
bring [1] 31/22
broad [1] 9/23
Bucklew [4] 5/20 5/23 18/3 29/19

## C

calculates [1] 20/2
call [1] 2/3
called [3] 2/2 6/19 20/7
can [12] 2/18 3/2 4/17 5/21 7/8 20/9 20/13 25/12 25/18 25/20 25/25 28/10
cannot [2] 12/6 13/13
capable [1] 29/12
car [1] 26/11
care [1] 25/20
carry [1] 17/8
case [25] 1/5 2/4 2/5 3/6 5/20 7/7 7/13 7/17 8/13 8/19 8/20 8/24 11/15 16/11 18/6 18/8 18/9 20/17 21/17 23/4 23/9 24/1 29/11 32/2 32/2
cases [1] 33/7
cause [3] 7/5 7/9 7/13
caveat [1] 12/20
certain [4] 10/9 11/5 17/13 23/3
CERTIFICATE [1] 35/3
certify [1] 35/6
challenge [2] 12/7 21/24
change [5] 18/19 25/13 26/11 26/22 29/25
charge [3] 7/1 10/9 10/16
charged [4] 6/25 7/14 7/15 10/13
charges [5] 11/14 21/4 21/14 22/24 29/14
charging [2] 7/12 20/19
choose [1] 22/1
CHRISTOPHER [1] 1/11
citizen [1] 5/16
civil [1] 16/24
clear [2] 5/14 27/1
CLEMENT [1] 1/13
Clerk [3] 2/3 4/2 4/4
client [4] 27/8 29/1 30/16 30/24
CM [1] 25/25
CM/ECF [1] 25/25
co [1] 32/5
co-counsel [1] 32/5
Code [2] 10/11 35/6
coerce [1] 6/9
coerced [1] 16/10
colloquy [1] 28/6
comment [1] 26/7
commercial [1] 27/21
commission [2] 10/16 13/10
committed [2] 7/6 7/7
communicating [1] 4/22
community [1] 7/4
company [1] 27/21
compel [1] 22/5
competent [1] 29/12
complete [1] 12/16
completed [2] 11/16 28/5
comply [2] 28/12 29/6
computer [1] 1/24
computer-aided [1] 1/24
concerned [1] 33/13
concerns [1] 31/6
concluded [1] 34/6
concur [1] 7/9
condition [1] 33/13
conditions [6] 11/5 14/12 32/15 32/18 32/19 33/17
conduct [1] 10/19
Conference [1] 35/8
confirm [1] 9/8
conformance [1] 35/8
connection [4] 6/24 8/24 11/14 16/3
consent [2] 6/10 6/15
consequences [3] 17/18 29/2 29/14
consider [1] 11/17
considered [1] 7/17
consists [1] 7/3
conspiracy [3] 23/19 23/19 27/2
Constitution [1] 20/22
constitutional [4] 6/25 21/6 22/7 22/11
contained [4] 16/4 20/9 21/4 26/12
contains [1] 19/9
controlled [4] 23/20 23/21 27/3 27/5
conviction [2] 13/18 14/7
cooperate [1] 11/10
cooperation [5] 11/16 11/18 12/12 12/16 12/17
copy [1] 30/11
correct [5] 2/25 3/1 26/18 26/19 35/6
cost [2] 21/21 33/7
could [8] 2/3 2/7 3/23 4/2 21/19 22/2 25/4 27/9
counsel [7] 8/9 21/17 28/12 29/6 29/9 30/9 32/5
counsels' [1] 2/7
count [7] 10/6 14/4 14/6 28/14 28/16 28/19 28/22
country [1] 5/16
counts [11] 10/8 13/8 14/5 17/5 17/7 22/24 23/2 23/8 24/1 29/18 29/20
Counts One [1] 23/8
couple [1] 26/6
course [2] 12/12 25/16
court [33] 1/1 1/20 2/2 2/12 9/9 10/21 10/23 11/6 11/14 11/22 13/24 14/5 14/18 14/19 14/24 15/1 15/5 17/13 17/15 17/25 18/10 20/1 25/13 28/7 29/11 30/11 30/22 31/7 35/1 35/5 35/5 35/12 35/13
courtroom [1] 1/24
cover [1] 10/2
covering [1] 32/1
cr [2] 1/5 2/5
credit [3] 27/20 27/23 27/24
crime [2] 7/6 7/7
criminal [5] 7/12 10/17 18/11 21/4 23/14
cross [2] 12/21 21/23
cross-examination [1] 12/21
cross-examine [1] 21/23
currently [1] 5/7

## D

Date [1] 35/14
dates [2] 10/9 22/25
DAVIS [1] 1/14
dealing [1] 31/5
deals [1] 30/4
decide [2] 7/5 19/6
deciding [1] 18/5
decision [2] 14/20 16/16
declines [1] 18/19
defendant [8] 1/8 1/17 4/4 7/7 16/3 28/12 29/6 29/12
defendant's [7] 8/8 25/22 29/7 29/10 29/20 30/5 31/3
defense [4] 16/2 21/17 22/1 22/5
defer [1] 14/20
defined [2] 27/18 27/19
degree [2] 4/14 4/15
delayed [1] 32/11
demeanor [1] 29/8
depart [2] 11/6 20/1
departs [1] 20/15
departure [2] 11/2 11/20
deprive [1] 16/23
Deputy [1] 4/4
described [1] 19/13
detail [2] 24/15 24/18
detention [2] 30/5 31/3
determination [2] 7/14 12/4
determine [2] 19/7 19/10
determined [4] 10/23 11/21 15/1 33/8
determining [1] 12/13
did [9] 4/13 6/2 6/9 6/14 8/4 9/13 9/17 24/17 26/19
different [1] 19/20
difficulty [1] 4/21
digital [1] 1/24
diligence [1] 13/14
direct [2] 12/20 33/3
directed [4] 32/22 33/4 33/5 33/10
directly [3] 13/6 13/7 18/21
disagreement [2] 24/20 27/15
discuss [3] 6/3 8/5 9/17
discussed [2] 8/18 25/5
dispute [4] 27/1 27/6 27/7 28/1
distribute [4] 23/20 23/20 27/3 27/4
distribution [2] 27/1 27/2
DISTRICT [13] 1/1 1/1 5/19 5/23 15/14 18/3 33/2 35/1 35/2 35/5 35/5 35/13 35/13
DIVISION [2] 1/2 35/14
do [44]
documents [1] 32/25
does [4] 4/22 7/12 15/14 18/23
doing [2] 2/20 33/15
dollar [3] 31/8 32/14 32/20
don't [6] 3/7 22/18 25/6 27/8 30/19 32/1
done [4] 8/11 10/14 24/12 32/6
doubt [2] 21/15 24/3
down [2] 2/18 29/5
downward [3] 11/2 11/20 20/1
downwardly [1] 11/7
drug [2] 5/5 5/8
due [1] 13/14
during [3] 3/12 4/20 12/12

## E

each [12] 9/7 9/10 9/14 9/18 14/4 14/6 17/8 23/2 23/25 24/14 24/17 29/17
earlier [3] 17/12 18/2 32/6
ECF [1] 25/25
effective [1] 21/16
eight [2] 11/9 15/11
Eighth [1] 20/21
either [2] 10/1 26/4
elected [1] 22/3
elements [6] 23/3 23/5 23/7 23/10 23/25 29/17
else [1] 5/10
end [6] 9/8 9/11 9/15 9/19 14/25 32/3
engage [1] 23/12
engaged [1] 23/11
English [1] 4/17
ensure [1] 24/9
enter [3] 2/25 5/18 5/21
entered [2] 9/2 14/4
entering [1] 29/12
entirety [2] 9/14 22/19
entitled [3] 7/24 13/16 35/7
ESQ [3] 1/13 1/14 1/17
essential [5] 23/3 23/5 23/7 23/25 29/17
Essentially [1] 22/23
evaluated [1] 31/19
evaluation [2] 33/4 33/9
event [1] 10/25
events [2] 20/14 21/1
ever [1] 5/3
Everything [2] 26/18 26/19
evidence [2] 8/13 19/4
examination [2] 12/20 12/21
examine [1] 21/23
excused [1] 34/4

## E

execute [1] 32/20
executed [1] 8/4
execution [1] 10/18
exercise [1] 13/13
expected [1] 19/20
experienced [1] 19/15
expired [2] 31/22 32/24
explain [3] 3/9 17/23 27/9

## F

face [1] 27/22
fact [6] 9/9 23/18 24/9 26/12 29/17 33/12
factors [1] 19/9
facts [6] 8/13 18/7 24/15 24/21 24/23 26/12
factual [3] 3/4 24/11 27/22
falls [1] 27/25
false [2] 3/24 11/13
falsely [1] 3/23
family [1] 12/19
far [2] 4/13 33/16
FCRR [2] 1/20 35/12
federal [6] 10/14 10/17 11/13 11/14 15/14 27/23
felony [1] 16/21
few [1] 17/22
Fifth [1] 23/22
file [2] 11/6 25/25
filing [1] 11/19
finally [2] 15/11 22/4
financial [2] 27/18 27/19
find [1] 26/1
finding [2] 7/9 29/11
fine [2] 17/9 17/9
firearm [3] 17/1 31/14 33/14
first [4] 13/22 20/15 23/11 25/8
five [3] 10/15 23/10 30/19
five-minute [1] 30/19
FLORIDA [11] 1/1 1/6 1/15 1/18 1/20 1/21 15/14 33/2 35/2 35/6 35/13
follow [1] 17/23
following [3] 23/10 30/22 32/19
force [1] 6/9
forced [1] 16/10
foregoing [1] 35/6
foreign [1] 31/11
forfeit [2] 12/23 13/16
forfeited [1] 13/3
forfeiture [2] 12/24 13/4
form [6] 6/1 6/2 7/24 8/2 8/4 8/10
formal [2] 7/1 7/10
format [1] 35/8
forth [5] 12/15 17/6 22/14 22/25 23/5
forward [1] 7/20
found [1] 20/10
four [15] 10/8 10/12 11/9 13/8 14/5 17/5 17/8 20/13 21/1 22/24 23/8 24/1 28/22 29/18 29/21
Fourth [2] 20/23 23/18
freely [2] 3/4 16/13
full [6] 5/1 12/16 22/20 22/21 25/8 29/2
fully [4] 8/22 11/10 11/13 29/12
funds [1] 23/14
further [11] 10/20 11/4 11/5 13/2 13/15 14/3 14/13 14/22 29/23 33/16 34/1

## G

garage [1] 26/2
gave [1] 10/19
get [4] 6/10 6/15 12/5 16/10
give [2] 18/6 19/2
given [4] 19/16 19/18 26/25 31/10
giving [4] 20/25 21/5 21/9 22/11
go [7] 4/13 6/14 7/20 18/2 18/16 23/6 24/1
goal [1] 9/22
going [11] 3/5 3/20 4/6 6/23 9/21 16/1 17/22 21/6 23/6 32/17 33/3
gone [1] 22/15
good [11] 2/9 2/11 2/15 2/16 2/17 4/8 32/8 32/9 32/10 33/14 33/24
government [29] 1/13 9/3 9/24 10/16 10/20 10/25 11/5 11/10 11/17 11/25 12/6 12/11 12/18 13/1 13/16 14/18 15/4 16/1 18/15 18/23 19/3 19/5 20/23 21/13 23/3 23/9 23/24 24/2 33/16
government's [1] 31/2
grand [7] 7/2 7/3 7/8 7/13 7/17 10/14 11/14
greater [1] 20/19
GREGORY [1] 1/14
guideline [7] 10/22 11/21 12/14 19/8 19/17 20/2 20/16
Guidelines [3] 18/8 19/25 20/3
guilty [50]
GUZEWICZ [26] 1/7 2/6 2/14 2/16 2/19 2/21 2/22 4/7 4/21 5/1 5/2 8/12 16/9 22/16 22/23 26/10 26/24 27/13 28/3 28/13 31/5 31/15 31/22 32/17 33/12 33/23

## H

had [13] 4/21 8/12 14/21 16/17 23/16 28/4 30/15 30/22 30/23 30/25 31/9 32/6 32/11
Hancock [1] 27/24
hand [1] 7/10
handwritten [2] 25/12 25/21
happen [1] 12/15
happy [2] 10/3 28/4
has [11] 7/6 9/25 14/20 15/20 16/9 20/1 20/6 20/7 24/12 31/22 32/2
Hatfield [1] 1/17
have [68]
having [1] 16/17
he [16] 4/22 19/16 19/17 20/16 29/13 29/14 29/21 30/12 30/23 31/7 31/9 31/18 31/22 32/6 32/6 32/11
he's [1] 31/10
health [2] 31/18 33/9
hear [1] 21/22
hearing [4] 1/10 25/6 32/6 32/11
here [6] 9/8 24/12 25/15 30/6 31/15 32/7
him [2] 4/22 27/9
his [12] 16/3 29/2 29/8 29/10 29/15 29/15 29/22 30/24 31/7 31/9 31/9 31/11
history [1] 18/11
hold [2] 16/25 22/2
Honor [25] 2/9 4/24 16/6 16/8 25/4 26/8 26/17 27/8 27/12 28/2 29/4 30/1 30/3 30/17 31/1 31/4 31/19 31/23 32/4 32/16 33/18 33/20 33/22 34/2 34/4
HONORABLE [1] 1/11
house [1] 31/14
how [10] 2/19 4/9 4/13 18/8 28/13 28/16 28/19 28/22 32/9 32/10
HOWARD [14] 1/13 1/20 2/10 2/11 16/5 25/6 25/24 29/24 30/23 32/1 33/11 35/5 35/10 35/12
HOWARD-ALLEN [2] 1/13 2/10
however [1] 5/21

## I

I'd [2] 9/8 28/4
I'll [5] 3/8 3/15 6/14 10/2 30/19
I'm [21] 3/5 3/20 4/6 6/23 8/16 9/21 11/22 13/5 15/24 16/1 17/22 19/5 20/6 21/6 23/6 23/19 26/5 28/9 32/5 32/17 33/3
I've [3] 19/12 19/24 28/5
idea [1] 33/14
illness [1] 5/4
immediately [1] 12/23
importance [1] 3/19
important [5] 12/3 18/13 19/19 21/5 22/6
impose [1] 14/5
imposed [1] 29/22
imposes [1] 20/18
imposition [3] 11/22 11/23 14/10
impress [1] 3/19
imprisonment [3] 14/11 14/13 17/9
include [1] 13/3
included [1] 24/11
includes [1] 9/24
including [8] 8/19 15/17 17/19 18/11 21/17 25/9 25/22 29/10
inclusive [1] 35/8
incriminating [1] 12/11
independent [2] 24/9 29/16
indicates [3] 11/1 12/17 13/23
indicating [1] 6/1
indictment [12] 6/20 7/1 7/1 7/8 7/15 7/16 7/20 7/25 8/10 10/8 10/13 29/11
influence [1] 5/7
inform [1] 18/7
information [23] 6/20 7/10 7/14 7/21 10/25 12/11 17/6 19/3 21/5 22/14 22/16 22/18 22/20 22/22 22/24 23/1 23/2 28/10 28/14 28/17 28/20 28/23 29/18
informed [1] 29/13
initial [2] 24/17 25/16
initialed [2] 9/7 9/18
initialing [1] 9/14
initials [3] 9/9 24/13 25/22
instead [1] 7/20
institution [2] 27/18 27/19
instructed [1] 22/2
insured [1] 27/21
intend [1] 22/18
intent [2] 23/20 27/3
investigation [1] 11/11
involve [1] 27/18
involved [2] 23/13 27/2
is [66]
issue [3] 22/4 25/7 30/4
it [36]
it's [13] 2/24 5/25 6/18 7/23 9/1 9/6 12/3 14/17 18/13 19/19 25/14 27/17 33/14
its [4] 7/9 9/13 11/19 22/19

## J

job [1] 2/20
Jones [4] 1/20 35/5 35/10 35/12
judge [26] 1/11 5/19 5/20 5/22 5/22 5/23 5/23 18/3 18/3 18/3 18/5 18/7 18/14 18/21 19/2 19/5 20/15 20/18 22/17 24/25 26/5 26/9 26/14 27/7 29/19 32/8
Judicial [1] 35/8
June [1] 1/5
jury [11] 7/2 7/3 7/8 7/13 7/17 10/14 11/14 21/12 21/15 22/1 24/4
just [6] 3/8 18/22 26/5 27/1 27/7 27/8

## K

KELLEY [2] 1/13 2/10
kind [1] 16/25
kindly [1] 3/14
knew [2] 10/17 23/13
know [4] 3/8 3/14 5/12 28/10
knowing [1] 29/15
knowingly [3] 3/22 23/11 29/1
KONRAD [4] 1/7 2/6 2/13 5/2

## L

language [1] 4/18

## L

largely [1] 20/11
last [1] 2/19
laundered [2] 13/10 13/18
laundering [3] 10/9 13/7 22/24
law [4] 3/3 12/25 13/15 19/11
LBs [1] 26/6
least [2] 7/8 18/9
left [1] 2/13
length [4] 6/4 8/5 9/18 22/16
lesser [1] 5/22
let [3] 3/8 3/14 28/10
level [2] 11/2 11/7
light [1] 33/12
like [5] 6/6 9/8 10/1 26/1 32/1
limited [3] 12/18 13/3 15/12
line [1] 25/8
local [1] 15/15
located [1] 13/13
look [1] 19/8
lose [1] 26/6
luck [1] 33/24

## M

Madam [2] 2/3 4/2
made [9] 9/25 14/16 15/4 15/20 16/3 16/17 19/7 25/14 31/15
MAGISTRATE [2] 1/11 5/22
make [11] 3/3 6/15 9/23 13/25 14/24 16/21 17/14 17/16 21/7 25/12 27/1
makes [1] 11/25
making [2] 3/24 11/12
mandatory [2] 11/23 14/6
manufacture [2] 23/21 27/4
MARK [2] 1/17 2/13
Maserati [5] 25/10 25/10 25/11 26/11 26/22
matter [5] 3/14 6/3 8/5 12/6 35/7
matters [1] 11/15
maximum [3] 17/8 17/9 20/19
may [16] 2/12 12/1 12/5 12/12 13/17 14/1 14/19 16/23 17/16 18/11 19/16 19/17 24/25 26/14 29/5 34/4
me [13] 3/8 3/14 5/21 6/2 6/3 6/11 6/16 7/24 9/3 10/1 27/22 28/10 29/9
means [1] 19/25
medication [1] 5/8
meet [2] 7/5 11/4
members [2] 7/9 12/19
mental [3] 5/4 31/18 33/9
mentioned [4] 9/1 18/2 19/24 24/7
method [1] 33/5
MIDDLE [6] 1/1 15/13 33/1 35/2 35/5 35/13
might [4] 5/10 19/17 19/18 26/1
mind [1] 5/14
mine [2] 26/4 26/5
minimum [1] 11/24
minute [1] 30/19
minutes [1] 17/22
modify [1] 26/11
moment [2] 24/25 26/14
monetary [1] 23/12
money [4] 10/9 13/7 22/24 26/25
more [2] 17/10 23/16
morning [14] 2/9 2/11 2/15 2/16 2/17 6/1 6/19 9/9 10/14 15/18 17/20 31/23 32/8 32/9
morning's [4] 3/13 5/11 17/23 24/8
most [1] 28/6
motion [2] 11/6 11/19
Mr [51]
Mr. [6] 3/16 6/4 8/1 8/6 16/18 33/12
Mr. Guzewicz [1] 33/12
Mr. O'Brien [5] 3/16 6/4 8/1 8/6 16/18
Ms [8] 2/11 16/5 25/24 29/24 30/7 30/23 32/1 33/11
Ms. [1] 25/6
Ms. Howard [1] 25/6
much [2] 30/14 33/25
must [1] 7/14
my [20] 2/12 2/13 2/24 3/9 3/20 3/22 5/25 6/18 7/23 8/9 9/1 9/6 9/22 27/8 27/17 28/5 28/6 29/8 29/8 29/19
myself [1] 3/9

## N

name [3] 2/12 2/19 5/1
namely [2] 12/18 14/17
narcotic [1] 5/5
narcotics [2] 26/25 27/2
nature [1] 29/13
need [1] 3/15
needs [2] 27/18 30/12
neither [1] 14/18
new [1] 32/25
nine [2] 12/10 12/22
no [33] 1/5 2/5 4/24 5/6 5/9 5/13 6/12 6/17 10/25 12/11 15/23 15/24 15/25 16/6 16/8 16/12 21/20 22/10 24/22 26/3 26/7 27/7 27/16 28/2 28/8 30/3 31/6 32/16 33/18 33/20 33/22 34/2 34/4
nominees [1] 13/1
not [34] 4/22 7/13 9/22 10/16 11/1 12/7 12/16 12/18 13/3 15/5 15/6 15/14 17/10 19/20 21/3 21/10 21/19 22/1 22/2 22/3 24/23 24/24 25/10 25/10 26/4 28/14 28/17 28/20 28/23 29/25 30/18 31/12 32/24 32/25
notation [1] 25/21
notes [1] 35/7
noting [1] 32/5
now [5] 6/18 8/9 19/15 21/7 23/7
number [2] 14/16 21/5

## O

O'BRIEN [38]
oath [3] 3/21 3/22 4/3
object [1] 18/22
objection [1] 32/13
objections [6] 18/16 18/17 18/20 18/21 19/6 33/21
observations [1] 29/8
obtained [2] 13/9 13/18
obviously [2] 31/4 31/11
occurring [1] 22/25
occurs [2] 20/14 21/1
offense [3] 7/12 13/25 27/18
offenses [11] 10/17 13/11 13/25 14/9 16/20 16/21 16/23 17/13 17/15 17/15 22/13
office [3] 15/13 16/25 25/25
officer [3] 18/1 18/18 18/19
officer's [1] 18/9
Official [2] 35/5 35/12
okay [8] 2/20 5/3 27/15 28/3 30/18 31/24 31/25 33/23
old [1] 4/9
omissions [1] 13/11
once [1] 16/22
one [31] 5/23 10/6 10/7 10/8 12/18 13/8 13/22 14/3 14/5 16/16 17/5 17/7 17/7 20/13 21/1 23/8 24/1 24/8 24/10 24/25 25/5 26/1 26/10 26/14 28/14 29/16 29/18 29/20 30/12 31/21 32/20
only [4] 7/8 20/13 21/3 30/4
open [2] 9/9 30/22
opinion [2] 19/16 19/18
opportunity [7] 8/12 14/21 18/15 19/3 30/15 30/24 30/25
oppose [1] 11/1
option [1] 8/19
options [1] 8/19
orally [1] 25/4
order [5] 2/2 13/4 13/24 17/14 17/16
other [15] 6/13 7/10 10/2 10/17 11/11 11/15 13/16 14/16 15/14 15/20 16/4 17/15 26/10 27/20 32/14
out [1] 33/11
outlines [1] 9/23
outside [2] 15/22 26/21
outstanding [2] 19/6 30/4
over [2] 18/16 31/24
own [2] 21/25 22/5

## P

PA [1] 1/17
page [19] 9/7 9/10 9/14 9/18 10/7 10/15 10/24 11/9 12/22 13/22 14/3 14/8 14/15 15/12 17/7 20/9 23/5 25/8 35/8
page 16 [1] 14/15
page 18 [1] 15/12
pages [6] 22/25 24/12 24/14 24/18 26/12 35/7
Panamera [1] 25/10
paragraph [30] 10/12 10/15 10/20 10/24 11/4 11/9 12/10 12/15 12/17 12/22 13/2 13/22 13/22 14/3 14/8 14/14 14/15 14/23 15/2 15/11 17/6 17/13 20/6 20/7 20/8 20/10 20/10 20/12 23/6 25/8
parameters [1] 27/25
part [5] 13/10 13/21 13/23 18/24 19/12
participate [1] 33/9
participated [1] 13/7
particular [5] 14/1 14/15 17/7 20/12 27/2
parties [4] 13/12 14/23 25/14 29/23
parties' [1] 25/22
party [1] 14/18
passport [2] 31/9 31/22
passports [1] 32/23
Pause [3] 25/3 26/16 27/11
Paweo [1] 5/2
penalties [1] 17/4
perjury [2] 3/23 11/12
permitted [3] 14/23 15/6 31/12
persist [1] 21/10
person [1] 32/2
personal [1] 18/11
persons [2] 7/3 11/11
persuade [2] 9/25 15/21
ph [1] 30/7
Pinellas [1] 27/23
PIZZO [2] 1/14 32/9
place [1] 23/22
Plaintiff [1] 1/4
plea [56]
plead [10] 6/2 9/25 10/7 15/21 16/10 16/16 28/13 28/16 28/19 28/22
pleading [14] 3/3 6/3 6/10 6/15 6/19 14/9 16/13 16/20 21/3 21/9 22/9 22/13 29/1 29/14
pleas [3] 17/5 17/19 19/21
please [7] 2/3 2/8 2/12 3/8 3/14 4/2 25/1
point [3] 3/12 4/20 31/21
pointed [1] 33/11
points [1] 14/16
policies [1] 11/19
Polish [1] 31/22
Porsche [3] 25/10 26/11 26/22
portions [1] 12/24
position [1] 31/2
possess [3] 16/25 23/19 27/3
possession [2] 13/1 31/9
possible [1] 17/17
prepare [1] 18/1

**P**

prepared [2] 18/18 28/10
present [4] 7/13 14/24 18/17 19/3
presentence [4] 14/21 18/1 18/4 18/14
Pretrial [12] 30/5 30/7 30/16 31/10 31/17 31/23 32/22 33/4 33/6 33/8 33/10 33/13
prior [2] 11/16 25/6
private [1] 7/5
probable [3] 7/5 7/9 7/13
probation [4] 17/25 18/9 18/18 18/19
proceed [1] 7/20
proceeding [4] 17/24 19/4 24/8 25/15
proceedings [8] 1/24 3/13 5/12 25/3 26/16 27/11 30/22 34/6
proceeds [6] 13/5 13/6 13/12 13/17 23/14 23/18
process [6] 6/24 17/23 18/24 19/12 25/20 33/15
promise [1] 11/25
promises [7] 6/15 9/24 10/21 11/5 11/17 15/20 16/2
pronounce [1] 2/19
property [4] 13/16 23/14 23/16 23/18
prosecuting [1] 15/15
prosecution [3] 3/23 11/11 11/12
prosecutor [2] 7/11 7/12
prove [5] 21/14 23/4 23/10 23/25 24/2
provide [4] 3/15 12/1 12/12 14/10
provided [3] 12/4 17/12 30/9
provides [4] 11/4 13/2 14/3 14/8
provision [3] 14/1 14/2 20/9
public [1] 16/25
punishment [1] 17/17
purpose [2] 18/4 31/19
purposes [1] 24/8
pursuant [5] 12/13 14/1 15/4 15/7 35/6

**Q**

qualifies [2] 11/18 27/23
Quattro [1] 25/9
question [1] 3/8
questions [8] 3/6 3/20 3/21 3/22 8/9 28/4 28/6 29/8

**R**

R8 [1] 25/9
random [1] 7/4
range [7] 10/22 11/21 12/14 19/8 19/17 20/2 20/16
rather [5] 6/20 11/3 13/23 20/7 21/14
read [3] 4/17 9/13 22/18
reading [2] 22/20 22/21
ready [1] 28/9
reason [1] 3/7
reasonable [3] 19/11 21/14 24/3
recall [1] 8/2
receive [1] 11/2
received [2] 8/23 10/25
recess [3] 30/19 30/21 34/5
recommend [3] 10/21 29/20 31/11
recommendations [3] 14/24 15/3 15/6
recommending [1] 11/20
record [4] 2/8 18/11 25/15 29/9
recording [1] 1/24
refers [1] 26/25
refile [1] 25/16
regard [4] 13/9 27/6 28/1 29/25
regarding [2] 14/25 31/6
regardless [1] 12/25
regulations [1] 35/8
reiterates [1] 14/15
reject [1] 14/19
rejected [1] 15/6
relate [2] 10/19 24/24
relation [1] 28/7
relative [2] 16/23 20/8
release [8] 14/11 14/11 14/12 17/10 30/5 31/3 32/17 33/17
released [1] 33/24
relevant [1] 19/4
relief [1] 12/5
removed [1] 31/16
report [18] 14/21 18/1 18/1 18/2 18/4 18/7 18/14 18/17 18/18 18/19 18/23 29/19 30/8 30/10 30/16 30/24 31/18 32/22
Reporter [4] 1/20 35/3 35/5 35/12
represent [1] 21/20
representation [3] 4/21 8/23 14/16
representations [4] 8/9 15/21 16/2 29/9
represents [3] 13/5 13/6 15/12
request [1] 11/1
requesting [1] 11/6
require [2] 12/19 14/1
required [4] 21/13 23/4 23/10 23/25
requires [1] 3/3
resolve [1] 19/6
respect [7] 12/1 12/18 12/20 17/13 17/15 24/1 31/3
responsibility [2] 11/3 11/8
rest [2] 26/20 26/21
restitution [3] 13/25 17/14 17/16
restricted [1] 33/1
rests [1] 12/6
result [5] 12/5 13/11 13/18 17/5 17/18
resulted [1] 13/7
return [3] 7/8 25/24 30/19
returned [1] 7/2
review [9] 6/23 8/13 10/2 14/21 18/16 21/6 30/15 30/24 30/25
reviewed [4] 15/17 17/19 24/14 30/18
reviewing [1] 24/18
right [22] 2/13 5/18 6/25 7/15 7/16 7/19 10/13 16/24 16/24 16/25 18/20 18/22 20/11 20/25 21/10 21/12 21/16 21/20 21/22 21/25 22/4 26/23
rights [7] 6/23 16/24 21/6 21/6 21/8 22/7 22/11
rise [1] 10/19
Roddy [1] 30/7
RPR [2] 1/20 35/12

**S**

said [3] 27/8 28/4 30/23
same [1] 18/1
satisfaction [2] 21/15 24/3
satisfied [2] 8/22 28/25
satisfies [1] 29/17
say [2] 26/19 26/21
school [1] 4/13
second [3] 13/21 13/23 23/13
Section [3] 10/10 27/25 35/6
see [3] 21/22 24/13 30/5
sees [1] 18/14
selected [1] 7/4
self [1] 12/11
self-incriminating [1] 12/11
sense [1] 4/22
sentence [17] 11/23 14/25 14/25 17/8 18/6 19/10 19/18 19/20 20/8 20/11 20/13 20/18 20/19 20/21 20/23 20/25 29/22
sentenced [1] 10/21
sentencing [20] 5/24 11/17 11/20 12/2 18/4 18/5 18/8 18/14 18/21 19/1 19/2 19/5 19/8 19/9 19/25 20/2 20/3 20/15 20/16 20/18
separate [1] 14/2
Services [5] 30/7 30/16 31/18 31/23 32/22
set [4] 17/6 22/14 22/25 23/5
sets [1] 12/15
seven [3] 10/24 11/4 20/10
shall [4] 12/13 13/24 14/5 17/13
she [3] 19/8 19/10 20/2
shortly [1] 6/14
should [5] 5/12 14/12 15/5 25/10 25/19
show [1] 31/7
sign [1] 8/10
signature [5] 7/25 9/10 31/8 32/14 32/20
signed [4] 6/1 7/24 9/7 9/19
significance [1] 3/21
significant [1] 31/6
signing [3] 6/2 8/2 9/14
similar [1] 11/25
similarly [1] 27/25
simply [1] 25/25
sir [1] 26/3
sit [2] 2/18 29/5
six [5] 4/10 4/11 10/20 14/14 15/2
so [11] 8/11 10/3 14/2 18/23 22/1 28/11 31/6 31/7 31/11 32/5 32/6
solely [2] 12/6 15/1
some [3] 3/6 9/21 23/14
sorry [7] 8/16 11/22 13/5 15/24 19/5 20/6 23/19
sounds [1] 26/1
speak [2] 3/13 3/15
special [3] 14/5 17/11 32/19
specifically [2] 13/3 22/2
stage [1] 28/5
stages [1] 21/17
standard [1] 32/18
standing [2] 2/13 28/11
starts [1] 25/9
state [1] 15/15
stated [1] 17/12
statement [2] 3/24 11/13
STATES [17] 1/1 1/3 1/11 2/6 2/10 5/17 7/11 10/10 12/23 13/13 15/13 23/23 35/1 35/5 35/6 35/9 35/13
statute [3] 19/9 20/20 27/24
statutory [3] 11/23 14/1 14/2
stenographic [1] 35/7
still [1] 6/6
stories [1] 21/24
Street [2] 1/15 1/18
subject [8] 3/23 11/12 12/24 13/8 14/13 17/4 17/18 32/18
submit [1] 33/5
subpoenas [1] 22/4
substance [1] 33/3
substances [4] 23/20 23/21 27/4 27/5
substantial [3] 11/18 12/1 12/4
such [4] 11/18 16/24 17/16 27/4
suggest [2] 31/7 31/18
suggestion [1] 31/17
Suite [3] 1/15 1/18 1/20
summarize [1] 9/21
supervised [3] 14/10 17/10 33/12
support [1] 24/9
supported [1] 29/16
supports [1] 3/5
sure [6] 3/3 9/23 16/21 21/7 25/2 26/15
surrender [2] 32/23 33/14
sworn [1] 4/4

**T**

take [5] 17/22 18/21 25/20 28/9 30/19
taken [2] 30/21 35/7
taking [1] 8/20
talk [1] 16/17
talking [1] 4/23

**T**

TAMPA [7] 1/2 1/6 1/15 1/15 1/18 1/21 35/14
ten [2] 12/15 17/8
term [4] 14/10 14/11 14/13 17/10
terms [4] 9/22 10/2 15/16 20/12
testify [6] 11/12 12/19 21/23 21/25 22/1 22/3
testing [1] 33/5
than [9] 6/13 6/20 10/2 16/4 17/11 19/20 20/19 23/16 26/10
Thank [13] 2/18 4/25 5/3 26/8 26/9 26/17 27/12 29/5 30/3 30/13 30/14 31/25 33/25
that [173]
that's [1] 25/23
their [1] 21/24
them [6] 9/22 21/9 21/23 24/2 24/18 28/4
then [6] 19/6 19/8 25/16 25/24 30/19 31/17
there [9] 3/4 5/10 7/5 12/20 22/10 23/2 24/9 31/13 31/17
there's [1] 25/6
therefore [1] 29/19
therein [1] 27/20
thereof [1] 12/25
these [5] 21/1 22/6 22/11 23/2 23/25
they [3] 7/4 12/25 24/24
they've [1] 32/23
thing [1] 25/23
things [1] 27/20
think [7] 5/12 25/15 25/23 27/8 31/9 31/10 31/14
third [3] 13/12 20/21 23/16
Thirty [2] 4/10 4/11
Thirty-six [2] 4/10 4/11
this [38]
those [18] 3/20 10/2 13/10 15/5 15/17 15/22 16/4 16/23 17/19 18/17 21/6 21/8 23/4 24/14 24/15 24/17 24/21 24/23
though [1] 19/19
threaten [1] 6/9
threatened [1] 16/9
three [6] 10/24 17/11 22/25 23/6 23/8 28/19
through [15] 6/14 10/8 13/8 14/5 17/5 17/8 22/15 23/6 24/1 24/12 24/14 26/12 29/18 29/21 35/7
time [7] 3/15 10/18 11/20 16/17 19/1 25/18 31/6
Title [2] 10/10 35/6
today [3] 2/25 22/10 31/15
today's [1] 25/6
tomorrow [1] 31/23
too [1] 18/23
took [1] 23/22
total [1] 14/7
transaction [3] 23/12 23/13 23/22
transcribed [1] 1/24
transcript [3] 1/10 35/3 35/8
transcription [2] 1/25 35/7
transcriptionist [1] 1/24
transferred [1] 13/12
travel [3] 31/11 32/25 33/1
treated [1] 5/4
treatment [2] 33/4 33/10
trial [8] 8/20 12/20 21/12 21/18 22/10 23/4 23/9 24/2
true [3] 24/24 26/13 35/6
trust [1] 27/21
truthful [1] 12/16
truthfully [1] 11/13
try [1] 4/6
trying [1] 26/6
TUITE [1] 1/11
turn [2] 14/14 31/24
two [10] 4/23 10/15 11/2 14/8 17/6 20/18 22/25 23/5 23/8 28/16
two-level [1] 11/2

**U**

U.S [1] 1/14
U.S.C [1] 27/19
ultimately [1] 19/10
unanimous [2] 21/15 24/3
under [10] 3/21 5/7 11/19 12/25 13/15 14/2 19/11 20/19 27/19 27/24
undergo [1] 33/3
undersigned [1] 35/7
understand [38]
understanding [9] 2/24 5/25 6/18 6/21 7/23 9/2 9/6 27/17 29/2
understands [1] 27/8
understood [1] 14/17
union [3] 27/20 27/23 27/24
UNITED [17] 1/1 1/3 1/11 2/6 2/10 5/17 7/11 10/10 12/23 13/13 15/13 23/22 35/1 35/5 35/6 35/9 35/13
unless [1] 20/25
until [1] 14/20
up [8] 13/17 20/25 21/5 21/9 22/11 25/14 28/11 31/7
upon [5] 3/19 8/8 13/13 14/11 29/7
upward [1] 20/1
upwardly [1] 20/15
used [1] 12/13
using [1] 1/24

**V**

valuable [1] 16/24
value [1] 23/16
vehicles [1] 25/9
very [5] 4/8 19/15 30/14 32/3 33/25
via [2] 1/24 25/25
victim [2] 13/25 17/14
victims [1] 17/14
view [1] 18/9
violate [1] 14/12
violates [1] 20/21
violation [1] 10/10
voluntarily [4] 3/4 12/23 16/14 29/1
voluntary [1] 29/16
vote [1] 16/24

**W**

waive [5] 7/14 7/19 10/12 22/20 22/21
waiver [4] 7/24 8/10 20/8 29/10
waiving [3] 20/11 21/9 22/10
walked [1] 30/10
wanders [1] 32/2
want [2] 14/14 16/21
warranting [1] 11/19
was [8] 8/16 15/24 23/18 26/25 30/21 31/13 31/17 32/7
way [18] 6/10 6/19 7/20 10/6 10/12 10/13 10/15 10/20 10/24 11/9 12/7 12/10 12/22 14/22 16/10 20/10 20/24 25/21
ways [1] 24/10
we [13] 10/14 22/21 25/4 25/12 25/18 25/19 26/14 30/19 31/4 31/6 31/7 31/10 32/4
We'll [1] 34/5
we're [1] 32/6
well [8] 3/14 6/21 21/8 21/25 30/25 31/24 32/4 32/12
went [2] 23/4 23/9
were [3] 23/14 24/1 30/22
West [1] 1/18
what [13] 4/23 5/1 5/16 6/6 12/5 12/15 18/5 19/7 19/16 19/18 19/20 26/1 27/8
what's [3] 6/13 6/19 31/2
whatever [3] 3/7 3/15 25/13
when [5] 25/24 26/21 28/10 30/10 32/1
whether [4] 11/18 12/4 12/25 32/23
which [18] 5/22 10/8 10/19 13/4 13/6 13/8 14/4 14/6 14/9 16/20 17/4 17/18 21/12 22/13 23/7 29/14 30/21 33/14
while [1] 3/21
who [8] 5/19 5/23 7/4 18/3 18/3 18/18 21/23 32/2
Why [1] 30/18
will [29] 5/23 8/9 11/1 11/6 11/17 12/7 12/15 12/18 14/13 14/25 15/6 17/23 18/1 18/2 18/3 18/7 18/10 18/15 18/20 19/2 19/6 19/8 19/20 22/10 22/10 29/19 31/7 31/22 33/1
wise [2] 25/15 25/23
wish [5] 2/24 3/13 5/20 6/1 7/19
wishes [1] 25/13
withdraw [2] 15/7 19/21
within [2] 10/22 27/25
witnesses [2] 21/23 22/5
word [1] 25/5
would [14] 5/20 6/6 10/1 14/4 21/13 21/13 22/2 23/3 23/9 23/24 24/2 25/16 27/22 31/10
write [1] 4/17

**Y**

yeah [1] 26/20
years [2] 17/8 17/11
yes [51]
you [233]
you'll [3] 18/17 33/12 33/23
you're [6] 3/21 10/7 10/12 11/9 28/10 32/1
you've [2] 22/15 33/15
your [119]
yourself [4] 3/6 9/4 13/1 13/11

TAB 5

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
- - -

HONORABLE SUSAN C. BUCKLEW
UNITED STATES DISTRICT JUDGE PRESIDING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 8:18-cr-265-T-24CPT |
| | ) | |
| KONRAD GUZEWICZ, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

SENTENCING HEARING
TRANSCRIPT OF PROCEEDINGS
JULY 2, 2019
TAMPA, FLORIDA

SHARON A. MILLER, CSR, RPR, CRR, FCRR
IL CSR 084-2617
FEDERAL OFFICIAL COURT REPORTER
801 N. FLORIDA AVENUE, SUITE 13A
TAMPA, FLORIDA 33602

APPEARANCES OF COUNSEL:

ON BEHALF OF PLAINTIFF:

UNITED STATES ATTORNEY'S OFFICE
BY: MS. MARIA GUZMAN
400 N. Tampa Street
Tampa, FL 33602
(813)274-6000
maria.guzman@usdoj.gov

ON BEHALF OF DEFENDANT:

O'BRIEN HATFIELD, PA
BY: MR. MARK O'BRIEN, ESQ.
511 W. Bay Street, Suite 330
Tampa, Florida 33606
(813) 228-6989
mjo@markjobrien.com

I N D E X

| WITNESSES | PAGES |
|---|---|
| MR. MARTIN ENTERLIN | |
| Direct examination by Mr. O'Brien | 22 |

(Court in session at 9:08 a.m.)

THE COURT: The matter that is set this morning for sentencing is United States of America versus Konrad Guzewicz. This is criminal case 18 265. Counsel will state their appearances starting with Counsel for the United States.

MS. GUZMAN: Good morning. Maria Guzman on behalf of the Government.

MR. O'BRIEN: My name is Mark O'Brien. To my right, your left, is Konrad Guzewicz.

THE COURT: Thank you. Mr. Guzewicz, would you stand, please, sir.

THE DEFENDANT: Yes.

THE COURT: Would you swear him in?

COURTROOM DEPUTY CLERK: Yes, Your Honor.

(Defendant sworn.)

THE DEFENDANT: Yes, I do.

THE COURT: Mr. Guzewicz, a few brief questions, please. In the past 24 hours, have you had any kind of drug, alcohol or medicine?

THE DEFENDANT: Just medicine, yes.

THE COURT: What are you taking?

THE DEFENDANT: I would take Harparin (phonetic) and Hydroxyzine.

THE COURT: Perhaps you could tell me what

you're taking it for, that might be helpful.

THE DEFENDANT: One is for depression, one is for anxiety.

THE COURT: Anxiety and depression?

THE DEFENDANT: Yes.

THE COURT: I have in front of me a presentence investigation report. Mine is dated May 23rd. I have read it. Have you been over it with your attorney?

THE DEFENDANT: When? Yes. Yes. Yes.

THE COURT: Okay. Do you need any more time to talk with him before we begin?

THE DEFENDANT: No. No.

THE COURT: All right. You may have a seat.

THE DEFENDANT: Thank you.

MR. O'BRIEN: Judge, for the record the medicine, that last medicine was H-Y-D-R-O-X-Y-Z-I-N-E.

THE COURT: Okay. We do have a slight problem this morning, Mr. O'Brien. I can't tell exactly what time, 5:20 you filed about 100 page -- well, sentencing memorandum is seven pages. The attachments total up to about 88 pages or more, maybe close to 100. Obviously I have not had an opportunity to read it.

MR. O'BRIEN: Judge, the majority of the attachments are records that I'm not sure why they were not attached to the PSI but he was ordered --

THE COURT: Well, that's some excuse. You can't file something at 5:20 and then expect me to read it for a hearing at 9:00 o'clock.

MR. O'BRIEN: I understand, Judge. Fair enough.

THE COURT: Here's my question. What do you want me to do? I can go sit down in my office for about 30, 45 minutes, however long it takes and I'll read it. I don't have another hearing. Well, none that I can do this, or I cannot read it, and those are really the two options, because clearly I read it.

MR. O'BRIEN: Judge, I have no problem with the Court taking time to read it. I think the Court will not need as long as it thinks. It's simply the notes are summarized in the pretrial services report but -- excuse me, the presentence report. These are just the actual documents that were summarized, so I wanted the Court to have it, so I have no problem with the Court -- the only thing I have this morning is a 10:30 a.m. phone conference with a district court in Kentucky.

THE COURT: I'm not worried about you because

you did it. I'm more worried about the prosecutor. What about you?

MS. GUZMAN: Your Honor, I'm good to go. I received a .pdf formatted email last night so I printed out everything and reviewed it last night, so I have reviewed everything. I can advise the Court that what I reviewed was the sentencing memorandum. The 88 pages essentially are records. It appears that Mr. Guzewicz was on pretrial supervision and as a result of his pretrial supervision one of the conditions was that he have mental health counseling or alcohol substance, I'm not sure which, but those records pertain to that.

THE COURT: Oh.

MS. GUZMAN: What's included in the records are, for example, notations of visits that he had with his therapist. There are indications in the report that, first of all, apparently did successfully comply with that condition, because the first page of the report indicates that he successfully completed his treatment as required by U. S. pretrial. Some notations were that he was -- was depressed.

THE COURT: Let me do this. Let me ask the probation officer, do you have a few minutes?

PROBATION OFFICER BYRDSONG: Yes, Your Honor.

THE COURT: When is your next hearing?

PROBATION OFFICER BYRDSONG: I have nothing the rest of the day.

THE COURT: All right. Well, why don't I step back in Judge Sansone's office for just a few minutes and look through this and I'll return after I've had an opportunity to do that. Hopefully it won't take me as long as it looks like it's going to take. Okay. Thank you.

(Recess had.)

THE COURT: You're right. You're both right. Most of this are medical records, treatment with I believe it was a psychologist, yes. And so I have -- I didn't read all of the medical records, but I glanced through them. I did read the sentencing memorandum.

Let me then talk about what has been filed. The sentencing memorandum and the attachments which I have now seen, the Government has filed a 5K1 motion in which it suggests that I depart downward two levels. There's also an order of forfeiture in the amount of $120,000 and that's I believe all that has been filed that I'm aware of. There is -- he's been on pretrial release, so I'm assuming somebody should have filed something but they didn't regarding

pretrial release, but I'm also assuming that he did fine and I would have heard. And in addition, the Defendant pled to an information as opposed to an indictment and the information contained four counts. I believe all of the counts were money laundering counts. The probation officer has done an advisory guideline calculation and has suggested that the Total Offense Level is a 20. Mr. Guzewicz, say your name again.

THE DEFENDANT: Guzewicz.

THE COURT: Mr. Guzewicz does not have a criminal record, so before any departures or variances, should there be a departure or variance, the guidelines scored him out to 33 to 41 months. There appear to be no unresolved objections to those guidelines by either side or the facts in the presentence report. I did have a couple of factual questions about the presentence report, Mr. O'Brien, which I thought were kind of puzzling. Maybe you could answer these questions.

His assets on Page 10 do not seem to match at all his employment or earnings or anything of that sort. For example, and I'll give you an example. It says that he has a trust of $659,000. He has a residence that's worth $190,000. He has substantial

cash in the bank. He has rental property 156,282. He does have a mortgage of 190 which apparently he pays $600 a month on which is a good deal if you can get it. It says -- and I don't know why the probation officer didn't tell me what but other liability type 192,000 and other liability type 31,000. What does that mean?

PROBATION OFFICER BYRDSONG: I don't recall what that was.

THE COURT: Why did you put it in there if you don't recall?

PROBATION OFFICER BYRDSONG: I don't recall now what it was. He gave us a lot of financial documents and I think it may have been property that he owned that there was nothing on. I just don't recall.

THE COURT: Next time you do a presentence report, just don't put something vague. It doesn't help me at all.

PROBATION OFFICER BYRDSONG: I understand, Your Honor. I apologize.

THE COURT: Okay. All right. Mr. O'Brien, maybe you can help me.

MR. O'BRIEN: So, Judge, the trust is -- I spoke to my client about this before, and the trust is

not what we would commonly refer to as a trust. For example, family leaves money after someone dies and puts it in the trust for various family members. I think that there might have been a little lost in translation. Mr. Guzewicz's English is a second language. That's actually the mortgage that he owes on his work building, so that's --

THE COURT: The trust is a mortgage he owes?

MR. O'BRIEN: What he's explained to me, and I don't quite understand it fully, but the business that he owns is in some sort of trust and he owes money on it. It's not a trust like an inheritance type of trust. I think, Judge, that the issue is not -- I think he's using the wrong words when he was speaking to probation for his presentence investigation report. There was another lawyer from my office present when that meeting occurred, so I think, Judge, and perhaps it's just best to let Mr. Guzewicz explain it directly, but what he told me prior to Court was that it's essentially a mortgage on the property that he runs his business.

THE COURT: I see. So it shouldn't really be under assets at all.

MR. O'BRIEN: No. I don't think it's assets, Judge, total 1.1 or 1.147 million. If you take off

659,000, it drops it down and then I believe when you compare it to his liabilities we're more in line of his actual status in life.

THE COURT: Okay. All right. Well, it didn't make any sense to me, the whole thing, and so let me ask -- mind if I ask your client about that?

THE DEFENDANT: Yes.

THE COURT: Okay. I did not quite understand it. Let's start with the -- well, maybe I should just start with -- start from the top maybe. Your business, is that the value of your business or the cash in your business or what is that figure, $22,000?

THE DEFENDANT: That's about value of the business, yes, yes, ma'am, for the entire business, yeah.

THE COURT: And then the $190,000 is the what, assessed value of your residence?

THE DEFENDANT: Correct, yes.

THE COURT: Okay. And then what is land?

THE DEFENDANT: There's two pieces of properties in south Florida, about 3,000 a piece.

THE COURT: Okay. So you do -- that is an asset.

THE DEFENDANT: Yes. Yes.

THE COURT: Okay. And now tell me about the

trust.

THE DEFENDANT: We open a family trust by recommendation of a different authority for better protection, so the building was put in the family trust. When we transferred the dealership name, then we put it in family trust for protection, you know. But the mortgage left is about 650, what's left to pay on the liability, so that would be negative 650 basically, yeah.

THE COURT: All right. I'm sorry. What is the mortgage on?

THE DEFENDANT: The commercial building where we work out of, me and my wife, yeah.

THE COURT: Okay. So the commercial building --

THE DEFENDANT: Uh-huh.

THE COURT: -- is in the trust?

THE DEFENDANT: Correct.

THE COURT: Okay. And you valued the commercial building at $659,000?

THE DEFENDANT: The property, yes.

THE COURT: Property. But then you're going to tell me you have a mortgage on that.

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. We'll get to that in a

minute. All right. Okay. So this is -- that is an asset, so the commercial property building is 650,000 -- $659,000, and it's in the trust, so I understand that. Now, I have something called rental property. What's that, 156,282?

THE DEFENDANT: It's a house in New Port Richey, yes.

THE COURT: It's what?

THE DEFENDANT: It's a house that we rent for.

THE COURT: So it's regular rental property?

THE DEFENDANT: Correct. Yes.

THE COURT: Okay. And then you have a mobile home, $75,000. Is that one you live in or drive or is that one you rent out?

THE DEFENDANT: This one is a rental property as well, Your Honor.

THE COURT: Okay. Let's move over to liabilities. At the top it says $190,000. That's the mortgage on what?

THE DEFENDANT: The house mortgage about 80,000.

THE COURT: I'm sorry. Say it again.

THE DEFENDANT: The mortgage for our house is about 80,000.

THE COURT: So do you know what the 190 is?

Boy, this is a mess. All right. Got it.

THE DEFENDANT: My wife might know better.

THE COURT: Well, you're the Defendant. Personal loans, I understand that. Credit card, I understand that. Okay. What is other liability, Type 1, $192,000.

MR. O'BRIEN: Judge, may I ask him a question? I want to make sure he understands what we're doing.

THE COURT: So far it sounds pretty cogent to me. Go ahead.

THE DEFENDANT: We have three mortgages right now, the commercial building, our personal house and an apartment condominium, so all together it's one but more the amount all three -- I mean two of them together that should be about the 190 would make more sense, yeah.

THE COURT: Well, take the house out. You already told me about the house. What is the $192,000 liability?

THE DEFENDANT: It -- yeah, the condominium left about 60,000 on the condominium and one of the mobile homes we owe money to also.

THE COURT: These are rentals -- I mean these are mortgages on the rental or the mobile homes or things like that?

THE DEFENDANT: Yes. Yes.

THE COURT: Okay. Then what's the other liability type $31,000.

THE DEFENDANT: That's going to be the mobile home, yes.

THE COURT: Okay. Let me see if I'm saying this right. So what you're telling me is your mortgage on your house is approximately $80,000. You owe $192,000 in mortgages on your rental properties which you have valued at $156,000. It doesn't make much sense, but. And then you owe $31,000 on the mobile home that you have valued at $75,000.

THE DEFENDANT: The mobile home, there's two mobile homes. One is paid off. One is payments on that, so the one of them, the 31 would be one of them, yes.

THE COURT: Yeah. Okay. So you own rental properties that you value at $156,000 but you owe $192,000 on them?

MR. O'BRIEN: All right. Judge, it appears that he has three mortgages on a house that he lives in, a condominium that he rents and a mobile home that he rents. In order, that would be 80,000, 60,000 and 31,000. He also has a mortgage on the business property that is in the family trust that is valued at

659,000. He believes he owes 650,000 on that.

THE DEFENDANT: Down to 620, 630 now, probably, yeah.

MR. O'BRIEN: So let me restate that last part. As to the business that is in the family trust, it is valued at 659,000. He believes his mortgage is 620 or 630,000, so.

THE COURT: Okay. That explains it a little more.

MR. O'BRIEN: It puts it more in line with his lifestyle. I think the biggest issue, Judge, is that $659,000 number is not an asset. It's an asset but it's mortgaged, it's an encumbered, so that lowers his net worth by $630,000.

THE COURT: Okay. And these are all things the probation officer should have done, but at any rate, okay. Thank you. I appreciate it. I don't think I have any other questions. I mean obviously the finances create all kinds of questions as to how much money he actually makes, has, all that, and how you can borrow that on property valued at that, but other than that, so why don't we start with the 5K? Would you have any objection to starting there?

MR. O'BRIEN: No, Judge. That's probably the driving force here.

THE COURT: All right. Ms. Guzman.

MS. GUZMAN: Your Honor, as the Court noted, the Government has filed a motion for a downward departure based on substantial assistance at Document 41. The Government has recommended to the Court a two level reduction in the base offense level for Mr. Guzewicz's assistance in this case. I believe that would lower his guideline exposure to a Level 18, Criminal History I which would place him at a guideline range of 27 months to 33 months. I don't know if the Court would like me to further argue.

THE COURT: Let me ask you, is this your case?

MS. GUZMAN: It's Ms. Howard-Allen's. I did try the case with Ms. Howard-Allen.

THE COURT: Okay, good. What case did you try?

MS. GUZMAN: It was United States versus Dion Fisher. It was a money laundering and distribution of fentanyl case that was heard before Judge Covington beginning on May 27th, two-week trial.

THE COURT: Okay. So you're familiar with the facts?

MS. GUZMAN: I am.

THE COURT: Here's my question. Did he testify in that case?

MS. GUZMAN: He did.

THE COURT: Okay. Normally the 5K1s I see from the Government are somebody cooperates, two levels, somebody testifies, two more levels. He only gets two levels. How come? And it makes really only six months' difference in his guidelines.

MS. GUZMAN: Again, the money laundering provisions were addressed by Ms. Howard-Allen. She filed the recommendation for two levels. In preparation for today's hearing, Ms. Howard-Allen was not going to be here. I did speak to Jay Trezevant who is the chief of our Economics Crimes Unit to ask him whether the two levels was consistent with office policy. Obviously I've only been with the office now six months.

THE COURT: Oh, yeah, but you're familiar.

MS. GUZMAN: I am. I am. I am very familiar.

THE COURT: Right.

MS. GUZMAN: And I was advised that Mr. Trezevant and Ms. Howard-Allen had reviewed Mr. Guzewicz's testimony, cooperation and plea in this case and that they had determined that two levels was appropriate, that it was consistent with office policy and that that was what they were going to recommend.

THE COURT: Okay. You were present at the

trial.

MS. GUZMAN: I was.

THE COURT: Did he testify in your opinion truthfully?

MS. GUZMAN: He did.

THE COURT: Openly?

MS. GUZMAN: He did.

THE COURT: Was it testimony that was important?

MS. GUZMAN: Yes. Mr. -- the indictment against Mr. Fisher was divided essentially into two sections. One dealt with distribution of fentanyl which carried various counts and then there was a separate part of it that dealt with money laundering counts. Mr. Guzewicz's testimony was specifically directed towards the money laundering counts.

THE COURT: Right.

MS. GUZMAN: Which dealt with really the four counts that he pled guilty to in the information in the case before Your Honor. I was present. I did not do the direct examination. I was present, however, and my answer to the court is, yes, he testified and he testified truthfully in my opinion.

THE COURT: Were there other cooperators that testified in that case?

MS. GUZMAN: There were specifically relating to the fentanyl counts. Christopher McKinney testified. He was recently sentenced by Judge Kovachevich, and Samuel Hoffman testified and he's going to be sentenced this afternoon by Judge Covington.

THE COURT: Okay. Did either get a 5K1?

MS. GUZMAN: Both had filings by the Government. In Mr. McKinney's instance, the Government filed a four level motion for reduction. In his particular case, there was a lot of assets that were forfeited, in the millions. In the case of Mr. Huffman who's to be sentenced this afternoon, the Government likewise filed the same motion that they did with Mr. Guzewicz for two levels.

THE COURT: Okay. Thank you. Mr. O'Brien, why don't I let you proceed and you can talk about whatever you want to talk about, the substantial assistance, the variance which I know you asked for in your sentencing memorandum. I'll just let you proceed; however, you know, I should say my presentence report wasn't quite up to date. It wasn't up to date, but I did look back at the docket sheet and I did see where Christopher McKinney was sentenced and he got sentenced to 24 months. I didn't know what

his 5K1 motion was. I see where Samuel Blaine Huffman is going to be sentenced, you're right, this afternoon supposedly by Judge Covington and his guideline level, his bottom level is 57 months. And Philip Morose is scheduled to be sentenced in front of Judge Merryday. His guideline level is 135 to 168 months. Okay. Thank you. Go ahead.

MR. O'BRIEN: Judge, I have one witness that I wish to call. He will be brief, and then I'd like to present my argument.

THE COURT: All right.

MR. O'BRIEN: If I may call Martin Enterlin. Judge, where would you prefer Mr. Enterlin?

THE COURT: In the witness chair. He needs to come up and be sworn and I will put him in the witness chair.

COURTROOM DEPUTY CLERK: Please raise your right hand.

(Witness sworn.)

COURTROOM DEPUTY CLERK: Please have a seat in the witness box. Please state your name and spell your last name for the record.

THE WITNESS: Martin Enterlin, E-N-T-E-R-L-I-N.

COURTROOM DEPUTY CLERK: Thank you.

THE COURT: Mr. O'Brien.

MARTIN ENTERLIN,

called as a witness on behalf of the Defendant, having been first duly sworn under oath, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. O'BRIEN:

Q Mr. Enterlin, if you could please briefly explain to Her Honor your prior experience in law enforcement.

A Yes. I'm a retired special agent with the Internal Revenue Service Criminal Investigation Division.

Q And where did you work?

A I worked in Manhattan, New York; Denver, Colorado; and Philadelphia, Pennsylvania.

Q What was your title on retirement?

A Assistant Chief of Philadelphia District.

Q After you retired, did you enter into private practice?

A Yes.

Q Did you work in the civil and criminal role?

A Yes.

Q Did I retain you to assist me in the matter of United States of America v. Konrad Guzewicz?

A Yes.
Q Could you please explain to Her Honor what I had you do?
A I sat through four debriefings with Mr. Guzewicz with the Government. In addition to that, I assisted Mr. Guzewicz in preparing amended tax returns for unreported income, first through the -- from the money laundering he did with Mr. Fisher and then through unreported income from the sale of a car to Mr. Fisher and tires and rims from Mr. Fisher and tires and rims to all other customers. This was a cash business and it was easy for him to have diverted some income to unreported income that wasn't reported, and for the three years 2015, '16 and '17 we prepared amended tax returns and Mr. Guzewicz filed those returns, paid taxes on all those returns and the IRS has negotiated all of those checks that he paid. And as of today he is clean with all of those tax years.
Q If we could back up to the start of the answer. With respect to the proffer sessions, cooperation efforts, could you please explain to Her Honor the dates and times that Mr. Guzewicz and you and sometimes me attended meetings at the U. S. Attorney's office here in Tampa?
A Yes. We had four proffer meetings where

Mr. Guzewicz cooperated with the Government, answered their questions. The first was April 25th of 2018 and that was from 1:00 p.m. until a little bit after 6:00 p.m., five hours, a little bit over five hours. The second meeting was almost a year later, April 2nd of 2019 from 3:00 p.m. to 6:35 p.m., 3.6 hours. The third meeting was April 14th, 2019 from 10:00 a.m. until 2:45 p.m., about 4.8 hours and the final meeting was Saturday, June 1st, 2019, from 1:00 p.m. until 4:30 p.m., about three-and-a-half hours bringing that to a total of 17 hours of debriefings and proffers with the U. S. Attorney's office and investigators that were present.

THE COURT: So he is still debriefing as late as June 1st?

THE WITNESS: Pardon me?

THE COURT: He is still debriefing as late as June 1st?

THE WITNESS: Yes. That was the Saturday in between the two-week trial and he was going to testify I believe the following Monday or Tuesday and his trial preparation.

THE COURT: Got you.

BY MR. O'BRIEN:

Q You also have a list of the people who were

present at these meetings?

A Yes.

Q If you could just tell me, do you see anywhere on that list whether Assistant United States Attorney Jay Trezevant was present?

A No, he was not.

MR. O'BRIEN: Pass the witness.

THE COURT: Ms. Guzman.

MS. GUZMAN: Your Honor, I have no questions.

THE COURT: Thank you. You may step down.

MR. O'BRIEN: Judge, I've been debating for the past 15, 20 minutes whether or not to make this next statement, and I hope the Court understands why I'm doing it. It's not to defend myself. I think this Court knows that I file my sentencing memorandums often ten days in advance.

THE COURT: I have to admit it was a surprise.

MR. O'BRIEN: The issue here, Judge, and it's through no fault of the prosecutors who are behind me to my left, your right, but I could not get an answer as to why there were -- the motion was only filed for two levels. Last week I was ill, I was out of the office on prescription medication, but I'm fine.

When I was working yesterday, I returned to work, I was in the Southern District of New York.

While sitting in an airport I was corresponding back and forth with the Government prosecutor trying to figure out why they only filed for two levels and that was --

THE COURT: Which government prosecutor?

MR. O'BRIEN: Ms. Guzman. I don't believe Ms. Howard. I think she might be on vacation or something, so -- and, again, through no -- I couldn't get an answer, and I've had my sentencing memorandum done for a while. It's just I wanted to try to articulate why I believe two levels was inappropriate, and I think the Court hit on something. Typically in this building if you testify you get four levels unless you are, you know, so fantastic you sometimes get more, or if it's a little shaky, maybe you get three or two. But in this case I think it's undisputed, and I appreciate the Government's honesty, the only witness that the Government called other than a law enforcement official as to the money laundering was Mr. Guzewicz. That's it.

As to the drug aspects, there were many witnesses including Mr. Morose who, Judge, I will tell the Court is my client, so I'm very familiar with this case both on the drug side and on the money laundering side. In addition to 17 hours -- and I was present

for about half of those, and I always have an investigator present, Judge, because Judge Kovachevich reminded me about 15 years ago I could not be a witness and both a lawyer. On my dime, I hired an investigator to sit through these debriefings so that he can come in and testify as to exactly what was done. I've had cooperators before, but for 17 hours of preparation, that's a long time. And the reason why it's a long time is because this was painstaking because of both the nature of the testimony which is white collar, it's math, it's complicated, and you have to make that accessible to a jury, but also because of Mr. Guzewicz.

And I think the Court understands at this point Mr. Guzewicz does not express himself clearly right off the bat. It takes him a little while to get his thoughts in order. I think that's directly in line with the mental health illness that he suffers from, his anxiety. His mind races. He needs to slow down, and I think once he slows down, you can see that he can properly articulate his thoughts.

We, Judge, spent a lot of time with Mr. Guzewicz on our own preparing him to testify but also with the Government. Taking that aside and as the Court knows, I'm not breaking any new ground here,

but the 5K1.1 language calls for an evaluation of four prongs. The first prong is the Court's evaluation of the significance and usefulness of the Defendant's assistance taking into consideration the Government's evaluation of the assistance rendered.

Here, we have nothing but positive things from the Government. I think Your Honor has taken them at face value. I'm confirming it. We know that he testified -- or he practiced testifying on weekends in the middle of the trial. He went in three times prior to that to proffer and make sure that the information he was giving to the Government matched up with the actual documents, and that's the good thing about math is two plus two is always four, so they could tell if he was lying simply by going through the bank records.

Then the second one is the truthfulness, completeness and reliability of any information or testimony provided by the Defendant. Again, Ms. Guzman to her credit and I expect no less said he was truthful, he was complete, he was open, he did his job. And, again, he was the only Government witness as to the money laundering aspect of this case. There's two tracts, the drug dealing and money laundering, and I'm talking about the Fisher case.

The nature and extent of the Defendant's

assistance, again, it goes back to how are we going to really prove this money laundering aspect without him? They couldn't. He was the person that tied Mr. Fisher's money laundering of his drug proceeds through his business. Without Mr. Guzewicz that would have been extremely difficult, because if he put context into it and explained exactly how they did it in terms of the exchange of cash and money orders and rims and cars, it kind of made this picture for the jury.

And finally, Judge, and this is -- I don't think should be forgotten, and that's any injury suffered or any danger or risk of injury to the Defendant or his family resulting from his assistance. And I showed the Court two photographs, and I want to put them in context because I'm the one that notified law enforcement each time. The first photograph is of a baseball bat that was taken to a car in his business and that was right around the time it became known he was cooperating with the Government because he had signed an information in the plea agreement, and all of a sudden his property starts to get damaged.

Then on the day that he testifies, the morning of, there's a dead rabbit found at his property, his actual, not business property, but personal property.

Now, could those have been two coincidences? Absolutely. But I think based on all of our collective experience here, the fact that we have a baseball bat taken to his assets on his property, then a dead rabbit placed at the steps of his home on the day he's going to testify, I think that shows you what we're dealing with here. So I believe, Judge, that --

THE COURT: It was the day he testified?

MR. O'BRIEN: The day, the morning he testified.

THE COURT: Oh, okay.

MR. O'BRIEN: Again, Judge, it's not -- it's too much to be a coincidence. There's too much smoke. I believe, Judge, that two levels with all due respect to the Government, and I still have not heard an answer to why it's only two levels, because we haven't heard anything negative. It's only positive. And I provided you with additional information, the length of hours that he cooperated and the threats that he received. I believe that two levels is woefully inaccurate or insufficient, rather, and I'm asking the Court to grant the Government's motion but grant it at a higher rate.

At the very least it should be four levels, but, Judge, I think in this case it falls to that six

level range which is sometimes given in this building for those individuals who are really important to the Government's case.

And I want to end this portion of my argument, Judge, with I just received an email from the Public Defender of this District and it had some stats, and it said that only 2 percent of Federal cases go to trial, which talking about the depth of a jury trial because of a variety of factors, mandatory minimums, all the power that the Government has. Well, in this case, they had the power. He pled guilty to an information. He pled guilty to a plea agreement. He cooperated with the Government for 17 hours leading up to his testimony. His testimony lasted 2.5 hours. Again, we were there. We know how long it was, so almost 20 hours of his life in addition to the time spent with us practicing and -- I shouldn't say practicing but preparing for his testimony and making sure that he does so truthfully and completely, and then all of the threats that have been made towards him, the fact that he's been outed as a, quote unquote, snitch, it's hurt his business in Largo, two levels is not appropriate. Judge, I suggest to the Court that six levels is appropriate and I'd ask the Court to do exactly that.

THE COURT: Do you want to make any argument regarding variance?

MR. O'BRIEN: I do, Judge. Mr. Guzewicz when you first meet him, I'll just -- I'll make this argument so I'm only talking about myself. When I first met with Mr. Guzewicz, it was hard to understand him, and I don't mean in a literal sense of the English-as-a-second-language issue. I'm talking about his mind moves so fast and I think that was directly related to his mental health. The more he received treatment, the more he was on medication, the slower everything went with him and it was much easier to communicate with him, but it's still difficult.

Mr. Guzewicz is an extremely hard worker, and if you see him right now, he's wearing the only suit he owns. He didn't know how to tie his tie. He has dirt underneath his fingernails, and that's not because he doesn't take care of himself. That's because he is a worker, and that is work. Those are details of his life that he can't get out.

He made a mistake in this case. I think it was directly related to how he was living his life at that point. Since --

THE COURT: How was he living his life at that point?

MR. O'BRIEN: Well, inappropriately. And I admit that and he admits that. He was using cocaine and he wasn't seeking help for mental health -- for his mental health issues. He was trying to self-medicate, but once this all came crashing down on him, he turned his life around and he's tested negative. There is no pretrial services report, but no one in here will dispute the following statement. Mr. Guzewicz has been perfect on pretrial release. There's been no issues. He hasn't tested positive. He's been clean as a whistle and he's made all of his mandated counseling sessions. He's doing that because he wants to. He wants to get better.

Mr. Guzewicz is the worker in the family. His wife is not only the beauty but the brains behind their operation. She runs the business. She cannot do her job without Mr. Guzewicz and Mr. Guzewicz can't do his job without her. They are very much a team. They have two wonderful children, a 14 year old who is a police explorer and wants to go into law enforcement and has straight A's in school, and a young girl who's present before the Court who loves her mother and father very much and is still obviously at age six growing into her life and what she will be.

I respect the fact that if the Court is going

to send him to prison, that's just the way it is, and he's earned it, but if I could just make an alternative plea. If the Court is even inclined to listen to this, I don't think it's necessary to send Mr. Guzewicz to prison when Mr. McKinney who was a prolific drug dealer along with Mr. Fisher received a sentence of 24 months, and he is the gentleman that received the four level reduction under the 5K versus the two that Mr. Huffman and Mr. Guzewicz received.

I don't know the significance -- I didn't represent Mr. McKinney although I'm familiar with his case. I don't know why he received such a low sentence. I don't know if there was a variance in addition to the 5K and perhaps the Government can explain that, but I don't see how this Court can sentence Mr. Guzewicz to a sentence comparable or greater than Mr. McKinney. Mr. McKinney is much more of a danger to the community than Mr. Guzewicz.

That being said, Judge, I would urge the Court respectfully and humbly based on the totality of this case, both the cooperation, his mental health, his somewhat physical health and the family dynamic with the fact that there are -- without him I don't know if that business will survive, and I'm very concerned for his family if it doesn't survive. They have assets

but they have, as we now know, because sometimes it's hard with Mr. Guzewicz, but as we now know they have mortgages attached to these assets and they're on that teetering. If money doesn't come in, this could all fall apart very quickly, so I respectfully urge the Court to fashion a sentence of house arrest. It would take not only the 5K and/or a variance, but I believe the Court can legally get to a Zone B type sentence where perhaps he's on house arrest for a year and an extended term of probation with the special terms and conditions, that he continue on with his mental health counseling, his prescription medication and drug testing, whatever types of additional terms and conditions the Court believes is appropriate.

I say that because I don't believe he's a danger to the community. I do believe that since he has cleaned up his life in terms of stopping, taking and using the cocaine, he's a different person. I believe especially, Judge, that since he's been on prescription medication he is a different person. He is much easier to talk to. He is much easier to deal with. He is calm. I would hate, Judge, for Mr. Guzewicz and his family to lose everything which is what I fear would happen should he go to prison.

Now, the flip side is, and the Government may

make the statement or you may be thinking it, well, he earned a prison sentence, and if that's what the Court believes, then I understand that and I accept it. Perhaps a sentence of a year and a day at that point would be the most --

THE COURT: Yeah. I'm not even thinking about the house arrest.

MR. O'BRIEN: That's fine, Judge. I have to make my pitch, but I also understand that I don't believe, Judge, going back to the disparity issue under 3553(a) that Mr. McKinney and Mr. Guzewicz receive the same sentence. I believe that Mr. McKinney is much more of a danger to the community than Mr. Guzewicz, and I would hope, Judge, that if the Court is going to impose a prison sentence, the Court would consider a year and a day. I think that that is significant but not greater than necessary. I think it would send a message to any other person in the line of Mr. Guzewicz's work that you cannot launder money for drug dealers, but at the same time, it would give an opportunity hopefully that Ms. Guzewicz could keep his business afloat for the probably ten months or so that he would be gone. It would be very difficult, but I believe, again, she's a very smart woman. She's capable. She would just have

to figure out how to do the physical side of it and I'm hopeful, Judge, that that's enough. I don't think we need to do anything more than that.

THE COURT: Well, you know, we've been doing this a long time. I know Ms. Guzman knows. Any time someone gets sentenced to prison for a crime that they did, it always damages their family. Now, in this particular instance, you know, damages, it may be because they'll lose some of their assets or maybe all of their assets. Sometimes the kids don't eat and they're taken away because they don't eat and it's much more damaging. But, you know, that's always the fallout from a Defendant who's thoughtless enough to do what he does. He puts his family in jeopardy.

Let me hear from the Defendant. What is it you'd like to say?

MR. O'BRIEN: Judge, he has a written allocution that he'd like to read, but before I do, I just want to make one other comment. I forgot but it's important. He has paid $20,000 towards his forfeiture and that is in addition to all the money that he has paid to the IRS that my office has helped him with to make sure that he's straight with the IRS for lack of a better phrase.

THE COURT: Are you telling me he doesn't have

the money to pay a fine?

MR. O'BRIEN: I think that he's -- the Government has encouraged him in advance of sentencing to pay money towards his forfeiture which is what he's done. I think that I wanted you to know for two reasons. I don't know -- I don't believe at this point he can pay a fine, because now that the Court understands his assets I think that they're encumbered, but more importantly, I want the Court to know that he's taken this serious, not only in terms of what he has had to do pursuant to the terms and conditions of his plea agreement as far as cooperation, but he also took it serious as to his financial responsibilities towards the United States which as this Court knows is not common when someone comes before the Court, so for him to pay $20,000 is significant and it wasn't easy. He paid it 5,000 here, 3,000 here over the course of his time while on pretrial release.

He has prepared a statement in allocution and I just remind the Court that English is his second language.

THE COURT: It would be helpful if he'd stand at the podium and read very slowly because the court reporter has to write it down.

MR. O'BRIEN: Judge, I will provide the document to the court reporter after he's done.

THE COURT: Okay. Thank you.

THE DEFENDANT: I know the things that I did were not right but throughout this process I learned few valuable lessons and changed my life for better. It helped me to have a better judgment of other people and learn to avoid being manipulated by other people for their benefit. I would like to thank all involved U.S. Government employees for their professionalism and respect I received in this difficult time. I tried as hard as I could to help and assist the U. S. Government, I hope you appreciate and value my help, wish we had more time. It was a pleasure and good experience to work with all of you. I will never forget the letter I received for Pro Offer, that was my day when I told myself, no more drugs and I kept my promise. I believe in earning money the right way through hard work or knowledge, whoever knows me that knows me -- that knows me, they know I work hard every day, many hours and many sacrifices, but somehow I still got involved with wrong people and trusted them or believed they were my friends which ended up being completely opposite. It's a great lesson that I will have for the rest of my life. I feel I am in much

better place now. From now on I would like to surround myself with positive people to stay on the right path and take care of my family. Thank you, Your Honor.

THE COURT: Thank you.

MR. O'BRIEN: Judge, I'm giving the allocution to your courtroom security officer to provide it to the court reporter.

THE COURT: Thank you. Ms. Guzman.

MS. GUZMAN: Yes, Your Honor.

THE COURT: Ms. Guzman, if you will help me out and tell me about the trial that you tried with Ms. Howard. Did the other people we've been referring to, Mr. McKinney, and the trial I'm talking about, Dion Gregory Fisher. Mr. McKinney or Mr. Huffman or Mr. Morose, were you involved in any of those cases?

MS. GUZMAN: In terms of the trial itself? I was. I was present at proffers for Mr. Huffman and Mr. McKinney. During the course of the trial I did the direct examination of Samuel Huffman.
Ms. Howard-Allen did the direct examination of Christopher McKinney but, of course, in preparation for the trial, I had to be prepared with knowledge about the entire conspiracy and everything that went on, so I think I am prepared to address any questions

of the Court.

THE COURT: Okay. Who was the prosecutor on 18 264, McKinney?

MS. GUZMAN: That was Ms. Howard-Allen.

THE COURT: And what about 18 237, Philip Morose?

MS. GUZMAN: Ms. Howard-Allen.

THE COURT: Okay. Thanks.

MS. GUZMAN: Addressing Mr. McKinney, Mr. McKinney was essentially the most important witness that was presented at the trial for purposes of the fentanyl distribution. Mr. McKinney's testimony essentially and cooperation initially opened the gate to Dion Gregory Fisher and subsequent search warrants that were executed by DEA and the Pinellas County Sheriff's Office that acquired large amounts of fentanyl in Pinellas County.

One of the search warrants occurred at Mr. Gregory's house in Pinellas County. One was at his warehouse, and there was a third search warrant that was executed at Samuel Huffman's warehouse. To put it into context for the Court, Samuel Huffman pressed pills for Dion Fisher at his warehouse. He was provided the ingredients by Mr. Fisher, the directions by Mr. Fisher and then Mr. Huffman would

press pills for delivery to Mr. Fisher. Mr. McKinney was essentially Mr. Fisher's partner in the business. When Mr. McKinney was arrested, his initial arrest occurred as he was departing Mr. Fisher's warehouse. He immediately was stopped by police and his cooperation began almost immediately.

Based on his cooperation, he initially wore a wire against Mr. Fisher that was part of the trial. There was -- during the portion of Mr. McKinney's testimony, there was a video that was presented to the jury and it was a wire that Mr. McKinney was wearing having a conversation with Mr. Fisher at Mr. Fisher's warehouse wherein not only the fentanyl business was discussed but you can see Mr. Fisher actually opening up his vehicle and taking out large amounts of fentanyl.

As a result of that, Mr. McKinney furthered the investigation through that wire and also continued debriefings with the Government. Mr. McKinney -- and this came up during his sentencing last week before Judge Kovachevich. The Government had moved for four levels on Mr. McKinney. Judge Kovachevich, however, wanted more information about the assets that had been obtained. There were I believe two or three homes that were forfeited by the Government from

Mr. McKinney. Mr. McKinney also, I think it was $1.5 million that was surrendered to the Government voluntarily by Mr. McKinney, and in addition to, Mr. McKinney also was the cooperator that led to Philip Morose who, of course, Mr. O'Brien indicated he represents, but Mr. Morose just again in context for the Court is a drug dealer -- well, alleged drug dealer or however you want to look at him.

MR. O'BRIEN: He's a drug dealer, Judge. He pled guilty.

MS. GUZMAN: He was your client.

THE COURT: He pled guilty.

MS. GUZMAN: In Boston, in the Boston area, and he was responsible for distributing drugs in the Boston area. Christopher McKinney was his supplier here in the Tampa Bay area and then, of course, Mr. Morose would obtain his drugs through Mr. McKinney, so Mr. McKinney was the link that led to Christopher Morose's indictment here, and I believe there may be some pending charges in Boston which I don't know whether have been resolved as of today. But Mr. McKinney obviously offered not only information as to Mr. Fisher opening up the prosecution of a large fentanyl distribution network, but also Mr. Morose in Boston.

Now, Mr. McKinney's testimony was also long during the course of the trial because Mr. McKinney, of course, testified historically about all of his relationships with Dion Fisher and how they started the business and the large amounts of fentanyl that they were distributing throughout the Tampa Bay area, and then again, Mr. McKinney ultimately distributed to Mr. Morose in Boston.

Mr. Fisher was also involved in that but Mr. McKinney was the key player involved with Mr. Morose. Again, he received a considerable variance from Judge Kovachevich.

THE COURT: That's what I was going to ask you, how in the world he got down to the sentence of 24 months.

MS. GUZMAN: Well, I believe -- I did a little bit of math later on. I wasn't at that sentencing, but I believe that the Government asked for four levels and I think that --

THE COURT: Four level 5K.

MS. GUZMAN: A four level 5K, and I think in order to get to the sentence, I believe Judge Kovachevich would have had to have departed 10 or 12 levels. That was just pure math. Now, I do believe that the way that the sentencing hearing went, the

Judge was very far concerned and focused in on the amount of assets that had been obtained and also his cooperation against Mr. Morose in Boston and opening up that investigation in the Boston area, so Mr. -- again, Mr. McKinney's cooperation with the Government was far in excess of any cooperation that Mr. Guzewicz would have provided, and obviously the Court in that particular case also determined that the amount of assets that were derived as a result of Mr. McKinney were substantial and took that into consideration as well.

Now, as far as Mr. Guzewicz, Mr. O'Brien spoke about four -- well, actually Mr. O'Brien and his investigator, about four sessions with the Government. The first one would have been in 2018. I was obviously not present then. I was otherwise employed, but I believe that that particular meeting would have probably been in conjunction with the plea agreement that they were trying to fashion since he pled pursuant to an information, so I guess it was more of a proffer towards resolving his participation in the case. There were two proffers that were alluded to in the spring. I was present at those also because we were preparing for trial and they were trial prep sessions.

While Ms. Howard-Allen was the one that did the direct examination of Mr. Guzewicz, those meetings were essentially trying to get all of the information, making sure that all of the information was truthful and credible to present to the jury. I know that they took several hours. That is true. I was present so I do not dispute the fact that we were there for several hours. Sometimes it was simply to just make sure that we had the facts straight, because whether it was, you know, being English as a second language or just the facts that occur, we wanted to make sure that we have the facts straight because Mr. Guzewicz was going to be testifying as to the money laundering count. So it was tedious going through those counts and the money and the transfers and what had happened to make sure that in presentation to the jury it was clear and it was truthful.

The fourth meeting would have been, trial had commenced. Mr. Guzewicz was going to testify. I was not present at that meeting, and it was essentially a trial prep because he was going to testify that following Monday I believe, so I've noted for the Court and, again, I note again that I was present. He testified truthfully. Obviously the jury believed his testimony and Mr. Fisher was convicted of all the

money laundering counts in the indictment.

So as far as that part of the argument as to his cooperation, that is what happened here.

THE COURT: Okay.

MS. GUZMAN: The Government takes the position that he was truthful and honest and obviously has filed a motion on his behalf. His testimony led to the conviction of Dion Gregory Fisher and that is very useful to the Government and the community. As far as the extent to which the Court believes that the two level motion is not sufficient, we leave that up to the Court's judgment, but there is a distinguishing issue between when we talk about parody between Christopher McKinney and Mr. Guzewicz and I just wanted to point that out.

THE COURT: Could I ask one other question? Do you know anything about the rabbit on the day of testimony?

MS. GUZMAN: Yes. That came up the day of testimony. Ms. Howard-Allen asked law enforcement Adam Phelps who was the lead investigator for Pinellas County and she asked him to look into the issue with the rabbit. As far as I know today to articulate to the Court, nothing came of it. They were not able to link it to any particular individual. Whether it was

a coincidence or whether it was something else, I can't -- I can't tell the Court other than law enforcement did look into it and wasn't able to make any kind of connection. In terms of the broken window which I guess occurred in 2018, again, I have no information to provide the Court as to that.

THE COURT: All right. Go ahead. That's all right. Move on to the variance.

MS. GUZMAN: As far as -- you know, obviously the personal characteristics, I don't really have any much to add there. You know, obviously the Court is correct, these are terrible cases because individuals are separated from their families and they've made mistakes and now they're here and their families are suffering and they're suffering and it's a terrible thing. We all wish we weren't here. I've made this argument many times in the past. Here we are, and it is the time to take responsibility.

I think he has taken responsibility. Obviously he's going to receive the benefit of acceptance of responsibility. If I didn't utter that before, the Court -- the Government, of course, would move for the third point as well. We believe that he certainly earned it, and I leave it up to the Court to determine in the totality of the circumstances what

the appropriate punishment for Mr. Guzewicz is.

THE COURT: I have a question.

MS. GUZMAN: Sure.

THE COURT: There was testimony and argument following that since he pled or since this all happened several things have happened in his life that he's tried to do better. Number one, he's gone back and corrected his tax returns which is no small thing.

MS. GUZMAN: Right.

THE COURT: And something he wouldn't have had to have done and apparently paid, it may be discounted, but paid, not just corrected but paid. He's also sought mental health counseling and tried to get on medication and get off drugs, so, and he's paid apparently, and I assume you have no dispute with this, down towards his forfeiture, so he has done some positive things while he's been out on pretrial release. How should I view that?

MS. GUZMAN: I think the Court should look at it positively. I mean obviously I looked at the medical records -- not the medical records but the records that were provided by Mr. O'Brien and reviewed them. Again, first thing I said this morning is he had successfully completed the mental health treatment that was prescribed by or suggested by U. S. Pretrial.

I think that's an important step that he took. It appears by all accounts that he's continued to be drug free. I think that is a very positive situation for himself and obviously his family, so I think those are all positive steps that he's taken in the hopes of rehabilitating his life, and certainly the Government would like to see him rehabilitate his life and provide for his family, so.

THE COURT: I have a question. What significance, if any, should I place to the fact that the Government allowed him to plead to an information as opposed to an indictment?

MS. GUZMAN: Well, I mean the information, of course, pleading to an information allowed the Government not to have to indict the case and present it to a grand jury. I'm fairly certain that presented to a grand jury based on the facts that the Government had, they would have still been able to obtain a true bill, but the fact that he was willing to waive grand jury and proceed without the Government having to present the case to a federal grand jury for prosecution purposes I certainly think was a positive effort on his behalf and it showed his genuine cooperation and desire to cooperate by way of an indictment. So I don't think I could take any other

position other than it would be positive.

THE COURT: Thank you.

MR. O'BRIEN: May I make three quick points and I promise to be brief?

THE COURT: Sure.

MR. O'BRIEN: Number one, as to Mr. McKinney's forfeiture, he did what he was supposed to do. There's a provision in the plea agreement that talks about forfeiture. It's not a cooperation issue. He received his cooperation credit evidently 10, 12 levels. I'm not asking for that. I'm asking for half of that.

Number two, as to the question the Court just asked the Government in pleading to an information, if he was indicted it would have been the same charges. As the Court sees from the PSI, there's no additional relevant conduct. He didn't get a break by pleading to an information. He helped the Government.

And finally, number three, Judge, I wasn't going to mention this, and I won't mention any particular names, but there was a fit proffer. It was actually the first proffer. Mr. Guzewicz was represented by a different lawyer who was not prepared to be a lawyer in Federal court and Ms. Kelly Howard-Allen stopped that proffer and I became

involved shortly thereafter, so he actually met with the Government five times, for what it's worth. And it was not -- He was truthful. It wasn't stopped because he was lying or mitigating. It was stopped because of the quality of representation that he was receiving at that time.

THE COURT: Okay. Thank you. I think I'm ready to sentence. If you'll come forward, please. I'm going to ask you one more time because I'd like to do this correctly. Pronounce your last name.

THE DEFENDANT: Guzewicz.

THE COURT: Say it again.

THE DEFENDANT: Guzewicz.

THE COURT: Guzewicz.

THE DEFENDANT: Thank you, Your Honor.

THE COURT: Konrad Guzewicz, on June the 28th, 2018 you entered a plea of guilty to Counts 1 through 4 of an information. They charged you with money laundering in violation of Title 18, United States Code, Section 1957. I accepted that plea. I adjudicated you guilty. You told me that you have been over the presentence report with your attorney and I too have read the presentence report. There weren't any objections to the guidelines or the facts really, so I will adopt them. I mean putting aside

the financial which was just sort of a mess, but everything else, I will adopt them. The Total Offense Level is a 20. The Criminal History Category is I. The range of imprisonment is 33 to 41 months prior to any departure or variance, one to three years of supervised release. There's no restitution. 15,000 to 150,000 is the fine range, and there is a $100 special assessment.

Mr. O'Brien, is there any legal reason why I shouldn't proceed with sentencing?

MR. O'BRIEN: No, Your Honor.

THE COURT: Ms. Guzman.

MS. GUZMAN: No, Your Honor.

THE COURT: The Court having asked why judgment should not now be pronounced and no cause being shown to the contrary, having considered those advisory guidelines that we have talked about, having considered everything that we have talked about this morning, I'm going to start with, first of all, the 5K1 motion that the Government filed in this case. I'm going to grant that motion and I'm going to depart downward four levels. I normally don't do that because the Government is always in a much better position unless I've heard the testimony, and I did not in this case, to know and it's always very hard

when there are various cases that are spread all over the judges and that kind of thing to make sure you -- I don't do something that causes disparate treatment, but I think in this particular situation you cooperated, you proffered, you testified, you testified truthfully and openly. It was important testimony toward the money laundering convictions and I think four levels is appropriate.

I'm also going to vary downward two levels and I'm varying downward two levels for the reasons -- really the reasons I talked to Ms. Guzman about, because once you got on pretrial release, you did a lot to help yourself. You paid and filed your back tax returns, and that's important. I mean it might not sound like it is, but I think that's important. You took over your mental health and started getting help and taking medication and you got off of any drugs, and you made an attempt to pay some money on your forfeiture, so for those reasons I'm varying downward two levels.

So by my calculations, if I grant the four levels for 5K1 and I grant the two level variance, then what I will do is vary downward a total or depart downward a total of six levels which would bring you down to a 14, Criminal History I, 15 to 21 months and

the sentence that I'm going to impose is 15 months in the Bureau of Prisons. In imposing this sentence, I've considered 3551 and the factors thereunder. I've considered 3553. I've considered a sentence that's sufficient but not greater than necessary.

Upon release from imprisonment, I will place you on a term of supervised release with three years. You'll have to comply with the standard conditions adopted by the Middle District of Florida. Both the sentence that I imposed and the supervised release will run concurrent as to Counts 1 through 4.

While on supervised release, you'll have to participate in substance abuse treatment if that is necessary. You'll have to submit to random drug testing not to exceed 104 tests per year. You'll have to submit to mental health counseling if that is necessary. You've got a big forfeiture, so you'll have to provide the probation officer with any kind of information regarding your financial situation, and you can't open any new credit charges, open any additional lines of credit or obligate yourself for any major purchases without the approval of the probation officer first.

You'll have to cooperate in the collection of DNA by the probation officer. I am going to waive the

fine based upon the forfeiture amount, and based on what I think are your financial situation -- is your financial situation, but the forfeiture will become final with this judgment.

I'll assess a $400 special assessment which is payable immediately, and I cannot waive that. I will adopt and accept the plea agreement.

The Court having pronounced sentence, Ms. Guzewicz, do you have any objection to the sentence or the manner in which it was imposed other than those you might have raised?

MS. GUZMAN: No, Your Honor.

THE COURT: Mr. O'Brien.

MR. O'BRIEN: No, Your Honor.

THE COURT: Any problem with him self-reporting?

MS. GUZMAN: No, Your Honor. I had already indicated to Mr. O'Brien that the Government would not object to self-surrender.

THE COURT: Then you can self-surrender. You'll be notified. Mr. O'Brien knows all about this, so I'm not going to go through the whole thing. You'll be notified and you'll have to surrender to the prison at the time you're told to surrender. I won't continue it, so make sure that you are prepared.

To the extent permitted by your plea agreement, you have the right to appeal the sentence that I have imposed. Any notice of appeal must be filed within 14 days or it's waived. You are entitled to a court-appointed attorney should you appeal, and I would instruct the clerk to waive the filing fee. Any recommendations, Mr. O'Brien?

MR. O'BRIEN: Judge, based on your sentence, we were going to request a prison camp, but he still might end up going through there anyways. I don't think there's any factors, but given the fact that I think he might qualify for the 65 percent, I think Coleman would be the best place for him if he's allowed because he's closest to his family. I know that it's a Low, it's a prison camp, but I think it's really important for his wife to be able to see him and if he goes to the panhandle I don't know if that will happen, so I want to recommend Coleman because it's within an hour and a half drive of his family.

THE COURT: All right.

MR. O'BRIEN: He will not be able to qualify for the residential drug treatment program because his sentence is too short, so that's the only recommendation we have.

THE COURT: All right. Good luck, sir. I

hope the rest of your life --
THE DEFENDANT: Thank you, your Honor.
THE COURT: -- is much better.
THE DEFENDANT: Yes. Thank you.
MR. O'BRIEN: Thank you, Your Honor. May I be excused?
THE COURT: Yes. Thank you.
(Proceedings adjourned at 10:46 a.m.)
(Which were all the proceedings had in the above-entitled cause.)

UNITED STATES DISTRICT COURT )
)
MIDDLE DISTRICT OF FLORIDA )

I, SHARON A. MILLER, Official Court Reporter for the United States District Court, Middle District of Florida, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographic notes taken by computer-aided transcription taken in the above-entitled cause by the undersigned and that the transcript format is in conformance with the regulations of the Judicial conference of the United States.

/S/Sharon A. Miller, CSR, RPR, CRR, FCRR
Official Court Reporter